Barney C. Ales, Esq.
Nevada Bar Number 0127
Kelly J. Brinkman, Esq.
Nevada Bar Number 6238
GOOLD PATTERSON ALES & DAY
4496 South Pecos Road
Las Vegas, Nevada 89121
(702) 436-2600/Facsimile (702) 436-2650
Email: bales@gooldpatterson.com
Email: kbrinkman@gooldpatterson.com
Attorneys for Defendant, Lucius Blanchard

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>THOMAS A. HANTGES,<br><br>Debtor. | Case No. 07-13163-LBR<br>Chapter 11<br><br>**Adversary Proceeding No. 08-01002** |
| MICHAEL W. CARMEL, Chapter 11 Trustee for the Estate of Thomas A. Hantges,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS A. HANTGES, et al.,<br><br>Defendants. | **DEFENDANT LUCIUS BLANCHARD'S MOTION FOR SUMMARY JUDGMENT** |

Lucius Blanchard, individually and as trustee of the Hantges Children's Education Trust, moves for an order granting partial summary judgment on the Fourth, Fifth, Eighth, Ninth, Tenth, Eleventh, Twelfth, and Thirteenth Causes of Action of plaintiff's complaint. This motion is supported by the Memorandum of Points and Authorities set out below, and the exhibits appended hereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

I. Nature of Complaint

Although inartfully drafted, belabored with inappropriate pejorative adjectives and terminology, glowing with tawdry descriptions of events actually unremarkable, and somewhat confusing, plaintiff's complaint seems to boil down to this: Thomas A. Hantges and/or Joseph D. Milanowski used misappropriated funds to prop up the businesses of South Meadows Apartments, LLC (the Tanamera Apartments) and Eagle Ranch, LLC, so all profits realized from those projects belong to USA Commercial Mortgage Company ("USACM"), not just return of the misappropriated funds with interest. This notion, and the theories used to float it, are not supported by any version of the facts, other than the spun and recast "facts" alleged by plaintiff.

The core theory underlying all of this is that Hantges and Milanowski breached their fiduciary duties to USACM by making loans instead of investments in those projects, and that the loans were not properly documented, were not made with USACM's own money, nor (implicitly - never alleged) repaid. These facts, allege plaintiff, permit plaintiff to characterize the transfers as investments which ought to be repaid along with all of the profits. Of course if the transfers are to be characterized as investments, then the percentage ownership interests of all investors would be readjusted, and USACM would be entitled only to a return of the "invested" money, plus its related share of profits - not to all profits.

The complaint then takes this core idea that all profits from Eagle Ranch and Tanamera Apartments and hypostatizes it by boldly asserting that Hantges Children's Education Trust ("HCET") is Tom Hantges' alter ego so that they may reach the profits from those projects fairly earned by HCET's investment with its own money.

One falsehood in the complaint is the repeated allegation that Dr. Blanchard "conspired," or, showing some sensitivity to the overreaching implicit in that word, engaged in "concert of action" with Hantges and Milanowski, so as to hook him as a culpable party. This "concert of action" is essential to making Blanchard liable under the applicable law.

The truth is that he was a passive investor relying on his friend, Tom Hantges, to manage the investment. Indeed, the notion that a busy physician would have the time, the knowledge, or the

desire to actively involve himself in the financial and development activities of the companies he invested in is quite a stretch. Dr. Blanchard's declaration describing his role is attached hereto as **Exhibit "A."** Plaintiff does not and cannot point to any active involvement by Blanchard in any of the acts complained of.

Finally, Blanchard notes a lot of verbiage in the complaint about the children receiving expensive cars and a house; generally, language that creates an invidious comparison between Hantges' children and those of parents of substantially less means. Those complaints are completely irrelevant. Unless plaintiff can show that the HCET money used to purchase those items was misappropriated from funds belonging to the estate of Tom Hantges - which he cannot - he cannot otherwise avoid those transfers. Such uses of HCET money are permitted by Article Second of the trust indenture: "Dispositive Provisions," which contains the following: "Trust principal may also be used for the education *or any other direct benefit of any of the lawful children of THOMAS A. HANTGES*. [emphasis added] <u>See</u> **Exhibit B-1."**

II. <u>Law</u>

The legal claims that Blanchard seeks dismissal of as to himself are:

Fourth Claim: Turnover of Property of Estate (Blanchard personally)

Fifth Claim: Turnover of Property of Estate (Blanchard as trustee of the HCET)

Eighth Claim: Transferee liability (fraudulent transfer)

Ninth Claim: Aiding and abetting (the fraudulent transfers)

Tenth Claim: Conspiracy (to make fraudulent transfers)

Eleventh Claim: Concert of action (in making fraudulent transfers)

Twelfth Claim: Unjust Enrichment: (receiving transfers of fraudulently transferred funds)

Thirteenth Claim: Constructive Trust (upon the funds wrongly received).

All of the claims require showing that Blanchard knew of and/or participated in some sort of wrongdoing. The notion that return of capital or profits earned on account of other investors' money should also be turned over to the debtor is unsupported by law.

1. **Standard for Summary Judgment**

Summary judgment is appropriate when there are no contested issues of material fact and the law mandates judgment in favor of the moving party. *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).* A genuine issue exists where the evidence is of the nature that a rational fact-finder could find in favor of the non-moving party. *Beard v. Banks, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006).* A fact is material if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254, 106 S.Ct. 2505,2510 (1986).* Summary judgment is appropriate as a matter of law when the non-moving party has failed to make an adequate showing on an essential element of her case as to which she has the burden of proof. *Celotex, 477 U.S. at 323.*

2. **Conspiracy Theories**

Plaintiff's basis for asserting that Blanchard conspired with or acted in concert with Hantges (or Milanowski) consists of three elements: Blanchard and Hantges are long-time friends; although Blanchard was the trustee of the HCET, he allowed Hantges to recommend its investments (although he did his own review of them before approving them); and the transfers complained of were not properly documented (implying some sort of conspiracy).

The truth is set out in Blanchard's declaration attached hereto as **Exhibit "A."** Not only did he not act in concert or conspire with Hantges or anyone else regarding USACM's business affairs, he knew very little about them.

The beneficiaries of HCET propounded discovery to try to determine the factual basis of the complaint. The answers they received are attached hereto as **Exhibit "A-1."** They are evasive, nonresponsive, and troublesome in light of the plaintiff's having spent millions of dollars on the investigation. Troublesome because after some two years of the bankruptcy, a year or so of investigation, and millions of dollars of creditors' money spent, plaintiff cannot meet the burden of Rule 9011, FRBP, and produce documents that support the claims that they are making against Blanchard. All he's got is that Blanchard and Hantges were friends and some transfers that they (mistakenly) think are wrongful. Moreover, invocation of rule 56(f) at this point in the case would be disingenuous to say the least.

Not having pled facts to support a conspiracy theory nor having produced documents to support the notion that Blanchard and Hantges (actually, USACM) conspired to use USACM money to "float" businesses it was not involved in, or to show that Blanchard had any knowledge at all of the transfers, summary judgment to dismiss Blanchard is appropriate. Friendship cannot equate with conspiracy; if it did, all of Hantges and Milanowski's friends could find themselves sued.

3. **Corporate Piercing**

Tom Hantges is neither a beneficiary, an owner, nor a trustee of the HCET. The complaint alleges that because of the eight transfers itemized in paragraph 9 of the complaint - and perhaps some others, although apparently no others were revealed in the nearly 8000 documents produced - the assets of that trust belong to the estate of Hantges. One must use the word apparently because not even plaintiff knows what's in those documents, but nothing appeared to pertain to any other distributions of the ilk complained of in paragraph 9. All of those distributions were made to reimburse Hantges or others for payments he advanced for items that were consistent with the broad terms of the trust. In fact, only four of the eight transfers were made to Hantges. Three, totaling about $46,000, were made to Jamie Hantges (or Wise), and one was made to a workman who resurfaced the children's pool table. See Declaration of Thomas A. Hantges attached hereto as **Exhibit "B."** Even if the transfers were not appropriate, eight questioned transfers totaling about $83,000 in a multimillion dollar trust that was in existence and funded for about 20 years is not enough to justify corporate piercing, but only a claim from the HCET (not Hantges) for reimbursement.

Plaintiff's theory amounts to reverse corporate piercing: holding the entity liable for the liabilities of the individual. In *LFC Marketing Group, Inc. v. Loomis, 116 Nev. 896, 904, 8 P.3d 841, 847 (2000)*, the Court recognized reverse piercing, and laid out the elements (which are the same as ordinary corporate piercing):

> The elements for finding an alter ego, which must be established by a preponderance of the evidence, are:
>
> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice.

Although a trust is involved here, the analogy, with the beneficiaries being like the shareholders of a corporation, pertains here. Query whether recommending investments and receiving four of the eight questioned transfers involves the level of influence and governance required to pierce. The obvious problems, however, are with elements 2 and 3, *supra*. Plaintiffs have (1) shown eight questioned transfers, all of which have simple explanations consistent with the trust indenture, (2) pointed out that the accountant communicated with Tom Hantges about trust accounting, and (3) observed that an attorney who represented Tom Hantges and the trust "recently withdrew" from representation of Tom Hantges. Plaintiff tries to spin this into something bad, but the truth is that Tom Hantges was neither a trustee, owner, nor beneficiary of the HCET, so until and unless some notice of a potential conflict because of this reverse piercing theory arose, there would have been no conflict in the attorney's representing both Tom Hantges and the HCET.

Perhaps the most important fact is that recognizing reverse corporate piercing here would work an injustice on Blanchard and Hantges' children, thereby creating an injustice.

These facts do not come close to meeting elements 2 and 3. The very fact that Tom Hantges was not a beneficiary nor an owner of HCET, and received no benefit from its activities, destroys any notion of inseparability between Tom Hantges and the HCET. HCET invested in some successful projects, notably, Eagle Ranch and South Meadows Apartments. It received a return of its investment and a handsome profit. Why this money, or any of it, should belong to plaintiff to promote justice is incomprehensible.

In typical reverse-piercing cases, the entity held liable for the individual's debts is one the individual owns or controls, and the creditor is a "corporate insider." The other type of reverse-piercing case involves an outsider trying to reach the corporation's assets to satisfy a judgment against a corporate insider, which is what the complaint seeks. A good discussion of these theories appears in the recent case *Postal Instant Press, Inc. v. Kaswa Corporation, 162 Cal.App.4th 1510, 77 Cal.Rptr.3d 96 (May 20, 2008)*. Although that court aligned itself with the jurisdictions that do not permit outsider reverse piercing, (Nevada does permit it), it nevertheless emphasizes the same elements that exist in Nevada law, particularly the element that the corporation to be pierced be controlled by the individual shareholder. The key concept is that the individual be a shareholder

(owner) of the entity, or, as expressed in *Loomis*, "there must be such unity of interest and ownership that one is inseparable from the other." Because Tom Hantges is neither a beneficiary nor a holder of any interest in HCET, HCET cannot be his alter ego under *Loomis* or any other application of the doctrine.

4. **Aiding and Abetting**

Aiding and abetting requires scienter, and that is what is missing here. The elements of aiding and abetting are (1) the existence of the underlying fraud, breach of fiduciary duty, or other wrong by the principal; (2) actual knowledge of the wrong by the aider and abettor; and (3) substantial assistance by the aider and abettor in accomplishing the underlying wrong. See *Abreu v. Bank of America Corporation, 525 F.Supp.2d 381, 387 (S.D.N.Y. 2007); Design Strategy, Inc. v. Davis, 469 F.3d 284, 303 (2nd Cir. 2006).* "Constructive knowledge is insufficient to create aiding and abetting liability; actual knowledge is required." *Abreu, Id.*

The preliminary question is what did Dr. Blanchard aid and abet. Plaintiff never actually says what wrongdoing occurred. He does suggest that the transfers from USACM to the two successful projects (Eagle Ranch and Tanamera Apartments) were wrongful, apparently because they were loans rather than investments. Those, however, cannot be what defendant aided and abetted because he knew nothing about them (See **Exhibit "A"**). So the wrong that defendant must have aided and abetted was the alleged transfers from HCET to Hantges. But those transfers were not illicit or improper: they were to reimburse Hantges for payments he made that were properly charged to the HCET because consistent with its purposes. See **Exhibit "B."**

Additionally, suppose for a moment that those eight transfers were all illicit, just theft from the trust. What confers upon plaintiff standing to complain about that? Why would the trustee in the bankruptcy of the wrongdoer seek to force that debtor to repay to his children the money he wrongfully took in the absence of those beneficiaries' agreeing that the transfers were wrongful, and in the face of their saying that the transfers were proper? The answers are nothing and he would not.

The real parties in interest here are the investors in USACM's brokered unpaid notes. USACM has sued some of the same parties as in this case, and in any event is seeking recovery of the same money - the profits from Eagle Ranch and Tanamera - for the benefit of those debtors.

Thus, plaintiff here is seeking recovery of money belonging, if to anyone other than those who already received it, to USACM's creditors. And there is no good reason why the USACM trustee loaned to the plaintiff millions of dollars to generate a lawsuit seeking something that more properly belongs to USACM's creditors, and something that could have been embraced in the suit filed by USACM's trustee.

It should be apparent that this lawsuit, even though the first one filed, should not have been separately investigated or filed, and constitutes abuse of process, and an awful waste of money that should have gone into the investors' pockets. Indeed, what is happening now is an effort - not likely to succeed - to recover the millions wasted on the investigation. The tragedy is that this entire exercise, even if "successful" enough to recover the expended money, will have served only to put money in the pockets of the attorneys, "experts," and trustees.

5. **Fraudulent Transferee**

Exactly what fraudulent transfers did defendant receive? The only transfers mentioned in the complaint are from HCET to Hantges, from USACM to Eagle Ranch and South Meadows Apartments, from Eagle Ranch and South Meadows Apartments to HCET, and from HCET to its beneficiaries. Plaintiff has no standing to complain of any of those. None of those transfers damaged the estate; they theoretically (and defendant disagrees with this) damaged the creditors of USACM, and, by a real stretch, the creditors of Hantges. Defendant received nothing, ergo, fraudulent transferee liability does not lie against him.

"In a bankruptcy proceeding, state law determines whether a right to sue belongs to a debtor or to the individual creditors." *The Mediators, Inc. v. Manney, 105 F.3d 822, 826 (2nd Cir. 1997).* The trustee stands in the shoes of the debtor and may assert claims that the debtor could have asserted prior to the bankruptcy. *Id.* "A bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt . . . itself." *Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 118 (2d Cir. 1991).* Under Nevada law, fraudulent conveyance claims belong to the creditors of the fraudulent transferor, not to the transferor. Plaintiff lacks standing to bring the state law fraudulent conveyance claims. Section 548 of the Code pertains to conveyances (or obligations) of the debtor, which are not involved here.

III. Conclusion

Plaintiff complains that the HCET should be treated as Hantges' property and its assets transferred to Hantges' bankruptcy estate because reverse corporate piercing is appropriate. He further alleges that Blanchard should also be liable and his profits from investments he made with the HCET should also be transferred to the estate. Yet the complaint, for all its colorful and, to be blunt, hateful language that exposes the attitude of the drafters more than the conduct of the defendants, fails to describe facts which, if true, would sustain the legal theories alleged.

The truth is far more mundane that the allegations in the complaint, and that truth is that Hantges did not treat the HCET as his asset, that Blanchard did not conspire or act in concert with Hantges regarding Hantges' activities as a principal of USA Commercial Mortgage Company, and did not engage in any conduct, with or without Hantges, that was contrary to the terms of the HCET.

Summary judgment in favor of Blanchard is appropriate.

DATED this 31st day of October, 2008.

GOOLD PATTERSON ALES & DAY

By: ______________________
Barney C. Ales, Esq.

**CERTIFICATE OF SERVICE**

The undersigned certifies that she placed a copy of the within DEFENDANT LUCIUS BLANCHARD'S MOTION FOR SUMMARY JUDGMENT in an envelope, postage prepaid, and addressed to:

Andrea Kim, Esq.
Michael Yoder, Esq.
Diamond McCarthy
909 Fannin Street, Suite 1500
Houston, TX 77010

Artemus W. Ham, Esq.
Ham Galliher LLP
550 East Charleston Blvd., Suite B
Las Vegas, NV 89104

Timothy S. Cory, Esq.
Timothy S. Cory & Associates
8831 W. Sahara Avenue
Las Vegas, NV 89117

Carol Harris, Esq.
Harrison, Kemp, Jones & Coulthard
3800 Howard Hughes Pkwy, 17th Flr.
Las Vegas, NV 89169

R. Gardner Jolley, Esq.
Brian E. Holthus, Esq.
Jolley Urga Wirth Woodbury & Standish
3800 Howard Hughes Pkwy, 16th Flr.
Las Vegas, NV 89169

Robert Charles, Esq.
Lewis and Roca LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Mark A. Solomon, Esq.
Dana Dwiggins, Esq.
Solomon Dwiggins & Freer, Ltd.
7881 W. Charleston Blvd., Suite 240
Las Vegas, NV 89117

and delivered said envelope to the U. S. Postal Service on November 3, 2008 for delivery.

An Employee of Goold Paterson Ales & Day