# EXHIBIT "A"

**EXHIBIT "A"**

DECLARATION OF LUCIUS BLANCHARD

Lucius Blanchard, under penalty of perjury, avers:

1. I have been named as a defendant individually and as trustee of the Hantges' Children's Education Trust in an adversary proceeding in the bankruptcy of Thomas A. Hantges, Case No. 07-13163-LBR. I am an adult with personal knowledge of the facts asserted herein and am competent to testify in a court of law.

2. I have been a friend of Thomas A. Hantges for over 25 years. During those years, Mr. Hantges has worked as a stockbroker, a real estate broker, and a mortgage broker.

3. I have never been privy to the details of what Mr. Hantges did in the course of his occupations, and have no knowledge about the transfers from USA Commercial Mortgage Company ("USACM") to Eagle Ranch or to South Meadows Apartments alleged in the complaint, other than the mere fact that some transfer or transfers were made.

4. In 1986, Mr, Hantges established a trust called the Hantges' Children's Education Trust ("HCET"). He funded it in two installments in 1988 and 1990, and appointed another to be trustee. I succeeded as trustee in 1997. To the best of my knowledge there were no additional amounts settled on the trust after the final funding in 1990.

5. Mr. Hantges recommended the investments that the HCET made; I trusted Mr. Hantges to do so, and his investments were successful as the HCET realized significant gains. I did review the investments myself and approve them.

6. Other than brief conversations about status of the projects, I never consulted with nor directed Mr. Hantges regarding any particular investment after the HCET had made it. Moreover, other than a general knowledge of the two projects that HCET had invested in, Eagle Ranch in Victorville, California, and Tanamera Apartments in Reno, Nevada, I had no knowledge of the any of the details about those investments. I do know that both projects generated substantial returns to the HCET in the mid-2000's.

7. I also participated in both the Eagle Ranch and Tanamera Apartments projects through my own company, Palomino Partners, a Nevada general partnership. The money I invested through Palomino Partners was my own money earned through my medical practice and other investments I made. That money is not connected to Mr. Hantges or to USACM.

8. Prior to the bankruptcy of USACM in 2006, Mr. Hantges was known to me and to others for over two decades as an honest broker who had made many successful investments and arranged many successful commercial loans that earned their investors handsome returns. Prior to the bankruptcy, I had no knowledge nor reason to believe that Hantges or Milanowski had committed any wrongdoing with respect to the business of USACM, particularly of the kind alleged after the bankruptcy. I believe that my reliance on Hantges to recommend investments for HCET under those facts was reasonable. I also believed that Hantges would do his best because the purpose of the trust was to assist his children with their education and other things to help them get started with their adult lives.

9. To the best of my knowledge, all transfers from the HCET were consistent with the language of the trust agreement, which provides for using the trust assets for more than just the children's education as the title of the trust suggests.

10. The children who are beneficiaries of the trust propounded interrogatories and a request for production to plaintiff to try to understand the factual bases for the complaint. The answers that they received, attached hereto as **Exhibit "A-1"**, are evasive, nonresponsive, and generally reveal no factual basis for the complaint insofar as it attempts to seek turnover of property from third parties such as Blanchard.

11. HCET received money from the owners of Eagle Ranch and Tanamera Apartments in connection with its investments in those companies; it did not receive money from USACM.

12. I am not holding any funds belonging to USACM.

13. I have not received any compensation or distributions from the HCET either individually or in my capacity as trustee of it.

14. Contrary to plaintiff's assertion in paragraph 12 of the complaint, I do not recognize the dubious nature of the HCET, nor do I agree that the HCET has a dubious nature. My remark about going to

jail was a reference to the fact that Tom Hantges, during the pendency of his divorce proceedings when he was very despondent, was headed for jail because he had received a third citation for driving while intoxicated, which I believed carried a penalty that included mandatory jail time. That remark had nothing to do with his conduct regarding the operation of USACM of the HCET.

FURTHER YOUR DECLARANT SAYETH NAUGHT.

Lucius Blanchard

# EXHIBIT "A-1"

7/1

Francis J. Burke, Jr., Esq. (AZ Bar No. 010570)
(CA Bar No. 75970)
*(Admitted Pro Hac Vice)*
Robbin L. Itkin, Esq., (CA Bar No. 117105)
*(Admitted Pro Hac Vice)*
Jeffrey M. Goldman, Esq. (CA Bar No. 233840)
*(Admitted Pro Hac Vice)*
**STEPTOE & JOHNSON LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Phone: (310) 734-3200
Fax: (310) 734-3300
Email: fburke@steptoe.com
Email: ritkin@steptoe.com
Email: jgoldman@steptoe.com

Brian D. Shapiro, Esq. (NV Bar No. 5772)
Law Office of Brian D. Shapiro, LLC
624 S. 9th Street
Las Vegas, NV 89101
Phone: (702) 385-5266
Fax: (702) 382-2967
Email: bshapiro@brianshapirolaw.com

*Attorneys for Michael W. Carmel,*
*Chapter 11 Trustee for the Estate of Thomas A. Hantges*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>THOMAS A. HANTGES,<br>Debtor. | Case No.: 07-13163-LBR<br>Chapter 11 |
| MICHAEL W. CARMEL, Chapter 11 Trustee for the Estate of Thomas A. Hantges,<br>Responding Party,<br>v.<br>THOMAS A. HANTGES, et al.<br>Defendants. | Adversary Proceeding No. 08-01002-MKN<br>**PLAINTIFF MICHAEL W. CARMEL'S RESPONSE TO DEFENDANTS, ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES AND ROBERT HANTGES' FIRST SET OF INTERROGATORIES** |

| | |
|---|---|
| **PROPOUNDING PARTIES:** | **DEFENDANTS, ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES AND ROBERT HANTGES** |
| **RESPONDING PARTY:** | **PLAINTIFF MICHAEL W. CARMEL, CHAPTER 11 TRUSTEE FOR THE ESTATE OF THOMAS A. HANTGES** |
| **SET NUMBER:** | **ONE** |

## PRELIMINARY STATEMENT

Plaintiff Michael W. Carmel ("Responding Party"), Chapter 11 Trustee for the Estate of Thomas A. Hantges ("Debtor"), has not yet completed his discovery or investigation of the facts relevant to the claims and defenses asserted in the Complaint (Docket No. 1) (the "Action"). Accordingly, the responses provided herein are offered subject to, and without prejudice to or waiver of, the Responding Party's rights to: (a) amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained; and (b) to introduce at trial or in any hearing before the Court any testimonial, documentary, or other form of evidence of facts yet to be discovered or unintentionally omitted herein.

## GENERAL OBJECTIONS

1. Responding Party objects to each and every Interrogatory on the grounds that Defendants' Interrogatories were issued pursuant to Rule 33 of the Nevada Rules of Civil Procedure, and not pursuant to the Federal Rules of Civil Procedure ("FRCP") applicable through the Federal Rules of Bankruptcy Procedure ("FRBP").

2. Responding Party objects to all Definitions, Instructions, and Interrogatories to the extent that they attempt or purport to impose obligations beyond those imposed or authorized by the FRCP (applicable through the FRBP) and pertinent case law.

3. Responding Party objects to all Definitions, Instructions, and Interrogatories to the extent that they attempt or purport to require disclosure of confidential communications between attorney and client, or disclosure of documents or information subject to and protected from disclosure by the attorney work product doctrine or any other applicable privilege or protection.

4. Responding Party objects to all Definitions, Instructions, and Interrogatories to the extent that they attempt or purport to require disclosure of information in contravention of Responding Party's privacy rights or interests.

5. Responding Party objects to all Definitions, Instructions, and Interrogatories to the extent that they attempt or purport to circumvent the procedure for expert discovery as set forth in the FRCP, the FRBP, and the Supplemental Report of the Parties' Planning Meeting filed by all parties to this Action.

6. Responding Party objects to all Definitions, Instructions, and Interrogatories to the extent that they attempt or purport to require disclosure of information not in Responding Party's possession, custody, or control.

7. The foregoing general objections are adopted by this reference in each of the particular responses below, whether repeated in a particular response or not. Without waiving any of these general objections, without prejudice to them, and subject to their application to each particular response below, Responding Party further responds to each particular interrogatory as follows:

## INTERROGATORIES

**INTERROGATORY NO. 1:**

Please identify each person who you believe or know has knowledge of any or all of the factual matters that are set forth in your Complaint, in Defendant's Answer to Complaint, in your responses to these Interrogatories, and/or which otherwise relates to the subject matter of this litigation, and provide a brief summary of the knowledge and/or information which you believe each such person may have.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 1:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "believe" and "Defendants" (as "Defendant" is not defined) and the phrases "otherwise relates," "subject matter of the litigation," and "brief summary"; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); it calls for information protected by the attorney work-product doctrine, and/attorney-client privilege; and it seeks information previously disclosed in Responding Party's Initial Disclosures dated April 7, 2008 pursuant to FRCP 26 (applicable through FRBP 7026). Moreover, discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Without waiving these and any other objections, Responding Party responds as follows:

1. Thomas A. Hantges. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the Hantges Children's Education Trust ("HCET"); (ii) the selection and conduct of trustees for the HCET, and the selection of banks to hold the HCET's investments; (iii) investments by the HCET; (iv) investments made with HCET funds, either directly or indirectly; (v) the management, operation, distributions and transfers to and from, among other entities, USA Commercial Real Estate Group, South Meadows Apartments, LLC, Tanamera entities, and Eagle Ranch entities (including discovery into relevant entities' operations, managers, investors, and fees, commissions, revenues and distributions therefrom); (vi) the HCET's membership in third-party entities; (vii) financial interrelationships among Thomas A. Hantges, Lucius Blanchard and Victoria Loob and their family and childrens' trusts and corporations and partnerships they own manage and control, including distributions, fees, commissions, revenues and profits received directly or indirectly from, among other entities, USA Commercial Real Estate Group, Eagle Ranch LLC, South Meadows Apartments, LLC and

other common investments owned, managed or controlled by them; (viii) distributions from the HCET to third parties; (ix) foreign bank accounts, travel, and investments; (x) Thomas A. Hantges' conduct as trustee to trusts settled by Lucius Blanchard; (xi) information pertaining to the allegations in the Responding Party's adversary complaint; (xii) Thomas A. Hantges' income and expenditures and depositories; (xiii) the income and accounting of the HCET; and (xiv) the erroneous nature of Thomas A. Hantges' denials to information pertaining to the allegations in the Responding Party's adversary complaint. [seems like some of the stuff in Blanchard below should also be in Hantges such as the tax and accounting work one below]

2. Lucius Blanchard. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the HCET; (ii) the selection and conduct of trustees for the HCET, and the selection of banks to hold the HCET's investments; (iii) investments by the HCET; (iv) investments made with HCET funds, either directly or indirectly; (v) the management, operation, distributions and transfers to and from, among other entities, South Meadows Apartments, LLC, Tanamera entities, and Eagle Ranch (including discovery into relevant entities' operations, managers, investors, and fees, commissions, revenues and distributions therefrom); (vi) the HCET's membership in third-party entities; (vii) Thomas A. Hantges' or Lucius Blanchard's receipt, either directly or indirectly, of funds connected to or derived from use of the HCET's assets; (viii) distributions from the HCET to third parties; (ix) foreign bank accounts, travel, and investments; (x) service as a trustee for the HCET; (xi) distributions by the HCET (or investments funded partially or fully with HCET assets) to Blanchard, Blanchard's investment or distribution of such funds, and subsequent investments or distributions from assets funded in whole or in part with HCET funds; (xii) Blanchard's membership or participation in any entity in which the HCET is a member, investor, or otherwise affiliated; (xiii) all tax and accounting work performed for development projects, including but not limited to, the HCET, South Meadows Apartments, LLC, Eagle Ranch, LLC; (xiv) financial interrelationships among Thomas A. Hantges, Lucius Blanchard, and Victoria Loob and their family and childrens' trusts and corporations and partnerships they own manage

and control, including distributions, fees, commissions, revenues and profits received directly or indirectly from Eagle Ranch LLC, South Meadows Apartments, LLC and other common investments owned, managed or controlled by them; (xv) information pertaining to the allegations in the Responding Party's adversary complaint; and (xvi) the erroneous nature of Blanchard's denials to information pertaining to the allegations in the Responding Party's adversary complaint.

3. Andrew Hantges. Subjects of information include, but may not be limited to, (i) Andrew Hantges' and Lucius Blanchard's service as trustee to the HCET and any other trust settled by Thomas A. Hantges or Lucius Blanchard; (ii) investments made by the HCET while Andrew Hantges served as trustee of the HCET; (iii) contributions made to, or distributions made from, the HCET while Andrew Hantges served as trustee; (iv) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the HCET; (v) Andrew Hantges' receipt of funds from the HCET, from any entity in which the HCET was an investor, member, or officer, or any entity affiliated with Thomas A. Hantges; (vi) information pertaining to the employment, income, and assets of any of Thomas A. Hantges' children; (vii) information pertaining to the allegations in the Responding Party's adversary complaint; and (viii) the erroneous nature of Andrew Hantges' denials to information pertaining to the allegations in the Responding Party's adversary complaint.

4. Brenden Hantges. Subjects of information include, but may not be limited to, (i) receipt of funds from the HCET, from any entity in which the HCET was an investor, member, or officer, or any entity affiliated with Thomas A. Hantges; (ii) current residential status; (iii) attendance at educational institutions; (iv) information pertaining to the employment, income, and assets of any of Thomas A. Hantges' children; (v) information pertaining to the allegations in the Responding Party's adversary complaint; and (vi) the erroneous nature of Brenden Hantges' denials to information pertaining to the allegations in the Responding Party's adversary complaint.

5. Matthew Hantges. Subjects of information include, but may not be limited to, (i) receipt of funds from the HCET, from any entity in which the HCET was an investor, member,

or officer, or any entity affiliated with Thomas A. Hantges; (ii) current residential status; (iii) attendance at educational institutions; (iv) information pertaining to the employment, income, and assets of any of Thomas A. Hantges' children; (v) information pertaining to the allegations in the Responding Party's adversary complaint; and (vi) the erroneous nature of Matthew Hantges' denials to information pertaining to the allegations in the Responding Party's adversary complaint.

6. Robert Hantges. Subjects of information include, but may not be limited to, (i) receipt of funds from the HCET, from any entity in which the HCET was an investor, member, or officer, or any entity affiliated with Thomas A. Hantges; (ii) current residential status; (iii) attendance at educational institutions; (iv) information pertaining to the employment, income, and assets of any of Thomas A. Hantges' children; (v) information pertaining to the allegations in the Responding Party's adversary complaint; and (vi) the erroneous nature of Robert Hantges' denials to information pertaining to the allegations in the Responding Party's adversary complaint.

7. Victoria Loob. Subjects of information include, but may not be limited to, (i) Loob's role in Thomas A. Hantges-related entities; (ii) Loob's involvement with the HCET, including the management of the HCET's books and other paperwork; (iii) communications between Loob and Thomas A. Hantges, any trustee of the HCET, or other third parties regarding the HCET; (iv) Loob's receipt of funds from the HCET, from any entity in which the HCET was an investor, member, or officer, or any entity affiliated with Thomas A. Hantges; (v) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the HCET; (vi) consideration in any form received from Thomas A. Hantges (or any entity affiliated with Thomas A. Hantges) and Blanchard (or any entity affiliated with Blanchard); (vii) information pertaining to the allegations in the Responding Party's adversary complaint; and (viii) the anticipated erroneous nature of Victoria Loob's denials to information pertaining to the allegations in the Responding Party's adversary complaint.

8. Helen Miller. Subjects of information include, but may not be limited to, (i) Miller's service as trustee to the HCET and any other trust settled by Thomas A. Hantges or Lucius Blanchard; (ii) investments made by the HCET while Miller served as trustee of the HCET; (iii) contributions made to, or distributions made from, the HCET while Miller served as trustee; (iv) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the HCET; (v) Miller's receipt of funds from the HCET, from any entity in which the HCET was an investor, member, or officer, or any entity affiliated with Thomas A. Hantges; (vi) Miller's removal or resignation as trustee; and (vii) Miller's communications with Thomas A. Hantges, any trustee of the HCET, or other third parties regarding the HCET.

9. Jamie Linn Wise (formerly known as Jamie Linn Hantges). Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, management, operation, distributions and transfers to and from, use, control, and abuse of the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and know-how with regards to hiding personal assets; (iii) the conduct and resignation of Blanchard in his role as former trustee for the HCET; and (iv) information pertaining to the allegations in the Responding Party's adversary complaint.

10. Kreg and Linda Rowe. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and know-how with regards to hiding personal assets; (iii) information pertaining to the allegations in the Responding Party's adversary complaint; (iv) any form of consideration received from, or provided to Thomas A. Hantges (or any entity affiliated with Thomas A. Hantges) or Blanchard (or any entity affiliated with Blanchard); and (v) the management, operation, distributions and transfers to and from, and tax and accounting work performed for development projects, including but not limited to, (a) DDH Financial Corp., Double Diamond Homes, LLC, South Meadows Office Investors, LLC, Wyndgate Partners, LLC, and Tanamera Homes, LLC; (b) B & L Investments; (c) USA/RVJ Development Fund One L.P.; USA/RVJ Development Fund

Two L.P.; RVJ Indian Wells; and RVJ/Island Park; (d) South Meadows Apartments LLC; Reno South Meadow LLC; HBM Holdings LLC; Palomino Partners LP; The Lucius Blanchard Children's Irrevocable Trust; Tanamera Holding Company Inc.; The Joseph D. Milanowski 1998 Trust; and (e) Tanamera Development LLC; Tanamera Commercial Development LLC; Tanamera Properties, LLC; Tanamera Holding Company, LLC; Tanamera Management LLC; Tanamera Resort Partners; M.P. Tanamera LLC; Tanamera Resort Condominiums LLC; and any other Tanamera entities about which the Rowes have knowledge.

11. Brett and Lorraine Seabert. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and know-how with regards to hiding personal assets; (iii) information pertaining to the allegations in the Responding Party's adversary complaint; (iv) any form of consideration received from, or provided to Thomas A. Hantges (or any entity affiliated with Thomas A. Hantges) or Blanchard (or any entity affiliated with Blanchard); and (v) the management, operation, distributions and transfers to and from, and tax and accounting work performed for development projects, including but not limited to, (a) DDH Financial Corp., Double Diamond Homes, LLC, South Meadows Office Investors, LLC, Wyndgate Partners, LLC, and Tanamera Homes, LLC; (b) B & L Investments; (c) USA/RVJ Development Fund One L.P.; USA/RVJ Development Fund Two L.P.; RVJ Indian Wells; and RVJ/Island Park; (d) South Meadows Apartments LLC; Reno South Meadow LLC; HBM Holdings LLC; Palomino Partners LP; The Lucius Blanchard Children's Irrevocable Trust; Tanamera Holding Company Inc.; The Joseph D. Milanowski 1998 Trust; and (e) Tanamera Development LLC; Tanamera Commercial Development LLC; Tanamera Properties, LLC; Tanamera Holding Company, LLC; Tanamera Management LLC; Tanamera Resort Partners; M.P. Tanamera LLC; Tanamera Resort Condominiums LLC; and any other Tanamera entities about which the Seaberts have knowledge.

12. David and Tamara Fogg. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and

know-how with regards to hiding personal assets; (iii) information pertaining to the allegations in the Responding Party's adversary complaint; (iv) any form of consideration received from, or provided to Thomas A. Hantges (or any entity affiliated with Thomas A. Hantges) or Blanchard (or any entity affiliated with Blanchard); and (v) the management, operation, distributions and transfers to and from, and tax and accounting work performed for development projects, including but not limited to, (a) Monaco Development Corp. and Monaco Diversified Corporation; (b) Builders Capital and Twin Leaf Homes, LLC; (c) USA/RVJ Development Fund One L.P.; USA/RVJ Development Fund Two L.P.; RVJ Indian Wells; and RVJ/Island Park; (d) Eagle Ranch Residential LLC; Eagle Ranch LLC; Anthony Monaco; MET Partners LLC; Palomino Partners LP; Gregory 1998 Trust; William & Kathleen Family Trust; The Joseph D. Milanowski 1998 Trust; the HCET; Jamie Linn Hantges Separate Property Trust; Lucius Blanchard; and Nevada Skin & Cancer, Lucius Blanchard MD Chartered; and (e) Tanamera Residential LLC; Tanamera Development Corporation; Tanamera Homes and Resort Communities; Tanamera Homes, LLC; and any other Tanamera entities about which the Foggs have knowledge.

13. Anthony and Susan Monaco. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and know-how with regards to hiding personal assets; (iii) information pertaining to the allegations in the Responding Party's adversary complaint; and (iv) any form of consideration received from, or provided to Thomas A. Hantges (or any entity affiliated with Thomas A. Hantges) or Blanchard (or any entity affiliated with Blanchard); and (v) the management, operation, distributions and transfers to and from, and tax and accounting work performed for development projects, including but not limited to, (a) Monaco Development Corp. and Monaco Diversified Corporation; (b) Builders Capital and Twin Leaf Homes, LLC; (c) USA/RVJ Development Fund One L.P.; USA/RVJ Development Fund Two L.P.; RVJ Indian Wells; and RVJ/Island Park; (d) Eagle Ranch Residential LLC; Eagle Ranch LLC; Anthony Monaco; MET Partners LLC; Palomino Partners LP; Gregory 1998 Trust; William & Kathleen Family Trust; The

Joseph D. Milanowski 1998 Trust; the HCET; Jamie Linn Hantges Separate Property Trust; Lucius Blanchard; and Nevada Skin & Cancer, Lucius Blanchard MD Chartered; and (e) Tanamera Residential LLC; Tanamera Development Corporation; Tanamera Homes and Resort Communities; Tanamera Homes, LLC; and any other Tanamera entities about which the Monacos have knowledge.

14. Thomas Shimkus. Subjects of information include, but may not be limited to, (i) activity of the HCET while at Banc of America Investment Services ("BOAIS"); (ii) reasons for the HCET to transfer its assets to BOAIS; (iii) reasons why the HCET left Wells Fargo Bank, N.A.; (iv) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (v) reasons for the HCET to leave BOAIS; and (vi) information pertaining to the allegations in the Responding Party's adversary complaint.

15. Sally Walker. Subjects of information include, but may not be limited to, (i) activity of the HCET while at BOAIS; (ii) reasons for the HCET to transfer its assets to BOAIS; (iii) reasons why the HCET left Wells Fargo Bank, N.A.; (iv) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (v) reasons for the HCET to leave BOAIS; and (vi) information pertaining to the allegations in the Responding Party's adversary complaint.

16. Garth McBride. Subjects of information include, but may not be limited to, (i) all tax returns prepared for Thomas A. Hantges or his affiliated entities, as well as any of the entities listed above for which Mr. McBride (or his accountancy company) provided tax or accounting related services; (ii) all tax returns prepared for the HCET; (iii) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; and (iv) communications with any governmental entities regarding Thomas A. Hantges, Lucius Blanchard, or the HCET.

17. Layne Rushforth. Subjects of information include, but may not be limited to, (i) legal work performed for Thomas A. Hantges; (ii) trust and estates work performed for Thomas A. Hantges; and (iii) the purpose, formation, funding, maintenance, use, control, abuse of, and

distributions from the HCET; and (iv) information pertaining to the allegations in the Responding Party's adversary complaint.

18. Rick Weiner and Steven Howard. Subjects of information include, but may not be limited to, (i) legal work performed for Thomas A. Hantges by the Busch Firm; (ii) trust and estates work performed for Thomas A. Hantges; (iii) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; and (iv) information pertaining to the allegations in the Responding Party's adversary complaint.

19. Matthew Callister. Subjects of information include, but may not be limited to, (i) legal work performed for Thomas A. Hantges; (ii) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (iii) the maintenance or possession of any assets belonging to Thomas A. Hantges, the HCET, or any entity affiliated with Thomas A. Hantges; (iv) consideration received by Callister, or Callister & Reynolds, from the HCET or Thomas A. Hantges, or any entity affiliated with Thomas A. Hantges; and (v) information pertaining to the allegations in the Responding Party's adversary complaint.

20. Rodney Balinsky. Subjects of information include, but may not be limited to, (i) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (ii) Thomas A. Hantges' use and manipulation of entities, and know-how with regards to hiding personal assets; (iii) Balinsky's receipt, possession, or transfer of Thomas A. Hantges' assets or ownership interests; (iv) any payments, items, or other consideration whatsoever received from or through Thomas A. Hantges or any entity affiliated with Thomas A. Hantges; and (v) information pertaining to the allegations in the Responding Party's adversary complaint.

21. Robert Creaser. Subjects of information include, but may not be limited to, (i) financial accounts belonging to the HCET, Thomas A. Hantges (or any trust for which he served as settlor, trustor, or trustee), or Lucius Blanchard (or any trust for which he served as settlor, trustor, or trustee); and (ii) information pertaining to the allegations in the Responding Party's adversary complaint.

22. Paul Hamilton. Subjects of information include, but may not be limited to, (i) financial accounts belonging to the HCET, Thomas A. Hantges (or any trust for which he

served as settlor, trustor, or trustee), or Lucius Blanchard (or any trust for which he served as settlor, trustor, or trustee); (ii) Thomas A. Hantges' sale of his home at 18 Chalet Hills Terrace, Henderson, Nevada to Paul Hamilton; (iii) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (iv) Paul Hamilton's involvement with Thomas A. Hantges or entities or trusts related to Thomas A. Hantges; and (v) information pertaining to the allegations in the Responding Party's adversary complaint.

23. David Berkowitz. Subjects of information include, but may not be limited to, (i) financial accounts belonging to the HCET, Thomas A. Hantges (or any trust for which he served as settlor, trustor, or trustee), or Lucius Blanchard (or any trust for which he served as settlor, trustor, or trustee); (ii) the purpose, formation, funding, maintenance, use, control, abuse of, and distributions from the HCET; (iii) investments made on behalf of, or with, Thomas A. Hantges, the HCET, or any entity related to Thomas A. Hantges, and revenues or other consideration received therefrom; (iv) information pertaining to the allegations in the Responding Party's adversary complaint.

24. Geoffrey and Amy Gutowski. Subjects of information include, but may not be limited to, the sale of real property to Thomas A. Hantges or any of his related entities.

25. Matthew L. Dion. Subjects of information include, but may not be limited to, the sale of real property to Andrew Hantges or any of his related entities.

26. Eve Mills. Subjects of information include, but may not be limited to, (i) Wells Fargo Bank, N.A.'s relationship with Thomas A. Hantges, Matthew Callister, Callister & Reynolds, both before and after becoming the trustee for the HCET; (ii) any declarations submitted by Ms. Mills in connection with the instant adversary proceeding; (iii) any and all due diligence conducted by Wells Fargo Bank, N.A. related to becoming trustee for the HCET; and (iv) information pertaining to the allegations in the Responding Party's adversary complaint.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 2:**

Please identify each and every person whom you expect to call as a witness at the time of trial in this matter and provide a description of each such witness's anticipated testimony.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 2:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "expect" and "description;" and it calls for information protected by the attorney work-product doctrine, as it seeks counsel's impressions or opinions formed in anticipation of litigation regarding which witnesses will testify and what such testimony is anticipated to contain.

**INTERROGATORY NO. 3:**

Please identify and describe with particularity each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 3:**

Responding Party objects to this Interrogatory on the following grounds: it is overly broad and burdensome in that it seeks "each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter"; it is vague and ambiguous as to the term "intend" and the phrase "with particularity"; and it calls for information protected by the attorney work-product doctrine, as it seeks counsel's impressions or opinions formed in anticipation of litigation regarding which documents will be used at trial.

**INTERROGATORY NO. 4:**

Please identify each and every person whom you expect to call as an expert witness at the time of trial in this matter along with a detailed description of the subject matter upon which each expert is expected to testify, the substance of the facts and opinions regarding each expert's testimony, and provide a detailed description of the basis for each such opinion.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 4:**

Responding Party objects to the Interrogatory on the following grounds: it is partially duplicative of Interrogatory number 2 which requests information about all "witnesses"; it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "expect," "substance," and "basis," and the phrase "detailed description"; it calls for information protected by the attorney work-product doctrine, as it seeks counsel's impressions or opinions formed in anticipation of litigation regarding which expert witnesses will called as witnesses and the expected substance of their testimony; and it is premature, because expert witness disclosures need not occur until October 2008 pursuant to the Supplemental Report of the Parties' Planning Meeting filed with the Court.

**INTERROGATORY NO. 5:**

Please identify, list and describe in detail the exact nature of each of your claims against Defendants ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES, and ROBERT HANTGES in this matter, including all damages and amounts that you are seeking to recover from Defendants ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES, and ROBERT HANTGES in this action, along with a description regarding how such damages and amounts have been computed, and show the mathematical computations that yield the damages and amounts for each claim by you.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 5:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the phrase "describe in detail the exact nature of each of your claims"; it calls for information protected by the attorney work-product doctrine, as it seeks counsel's damages analysis; and it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033). .

Without waiving these objections, Responding Party responds that his claims against Robert Hantges, Matthew Hantges, Brenden Hantges, and Andrew Hantges are detailed in the

Complaint filed in this Action. Each of these individuals currently possesses assets belonging to the Debtor's estate (or property purchased with assets of Debtor's estate) received from the HCET, or by entities in which the HCET invested, served as a member, or was otherwise involved. These assets must be turned over to Responding Party. Furthermore, Andrew Hantges has incurred liability by virtue of his former position as trustee for the Hantges Children's Education Trust, and his role in assisting his co-defendants in their wrongdoing.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 6:**

Please identify and describe in detail each and every fact, document and/or communication which you believe or otherwise contend supports, evidences and/or establishes that THE HANTGES CHILDREN'S EDUCATION TRUST is an illusory sham trust that Debtor, THOMAS A. HANTGES has dominated and controlled for years.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 6:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the phrases "describe in detail," "otherwise contend," "supports, evidences, and/or establishes," and "for years"; it calls for information protected by the attorney work-product doctrine, attorney-client privilege, and joint-defense privilege in that it seeks counsel's analysis and conversations regarding the sham nature of the HCET; and it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033).

Without waiving these objections, Responding Party responds as follows:

Debtor has claimed in his filings with the Court to be penniless and without any substantial assets. Yet, he not only created the HCET, but for years he has influenced, directed, and controlled millions of dollars in assets flowing through the HCET.

Prior to creating the HCET, Debtor appears to have attended at least one seminar in how to protect/shield his assets. Also, handwritten notes demonstrate his interest in placing assets in limited partnerships and children's trusts to avoid seizure by creditors. Debtor, for years, was concerned with protecting his assets from third parties, and set up multiple trusts as a device for owning assets that he did not want to put into his own name, so that third parties could not access those assets.

Debtor and his co-conspirators have utilized the HCET to engage in sophisticated financial and real estate transactions designed to reap benefits for Debtor and his co-conspirators, and occasionally to purchase non-educational, extravagant items for Debtor's children.

Lucius Blanchard ("Blanchard"), Debtor's close friend and co-conspirator, served as the trustee for the HCET for approximately 10 years. Likewise, Debtor served as the trustee for a similar trust for Blanchard's children. Together, Debtor and Blanchard (under Debtor's direction and control) abused the protections afforded to these trusts to make themselves rich. For example, both Debtor and Blanchard used one another's trusts to invest in Debtor's own real estate vehicles and other entities, through which they received thousands, if not millions, in management fees and returns on investments via Debtor's and Blanchard's affiliated entities.

Debtor controlled and directed Blanchard's conduct as trustee for the HCET. For example, Debtor's affiliated companies maintained the HCET's books and records, and Debtor's outside accountants at Beadle McBride prepared its tax returns. More particularly, Debtor induced Blanchard to pre-sign batches of blank checks that Debtor would later use, filling in the payee and amount as he unilaterally determined.

Debtor has directed the improper transfer of funds from the Hantges Children's Education Trust in an effort to secrete his assets from his creditors. For example, in mid-2005,

co-conspirator Andrew Hantges received and cashed two checks, totaling $600,000, from the Education Trust's bank account. During that same period, Andrew Hantges also received over $400,000 from USA Commercial Mortgage Company.

Still other transfers demonstrate a concerted effort to dissipate all liquid assets from the HCET just as Debtor was placed into an involuntary Chapter 11 bankruptcy. For example, at that time, Andrew Hantges, in his capacity as trustee for the HCET and without disclosure to the Trustee (at a time when the HCET's counsel and the Trustee's counsel were negotiating a stipulation concerning restrictions on the HCET dissipation of assets pending the Trustee's investigation), caused the HCET to withdraw $159,000 from the HCET bank account by way of a cashier's check on or about July 12, 2007. In turn, Andrew Hantges attempted to hide the fact that such assets were going to third parties by using the cashier's check to cause four different cashier's checks to be issued to his brothers for extravagant purchases (such as for a second brand new BMW in two years, at a cost of $65,000, for Brenden Hantges) and to counsel for the HCET and Debtor.

Blanchard has also recognized the dubious nature of the HCET. Indeed, in 2006, Blanchard wrote a note to Garth McBride ("McBride"), the accountant for the HCET, who is also Debtor's personal accountant and accountant for Debtor's affiliated entities, which read, "Is Tom Hantges Trust Account For the Kids looking OK From Your Prospective. I do not want to go to Jail with him."

Other relevant facts are set forth in Responding Party's Complaint, and documents supporting his claims for relief have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges, and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 7:**

Please identify and describe in detail each and every fact, document and/or communication which you believe or otherwise contend supports, evidences and/or establishes that Defendant ANDREW HANTGES, as trustee for the Hantges Children's Education Trust caused the HCET to withdraw $159,000.00 from the HCET bank account by way of cashier's checks on or about July 12, 2007, and in turn, attempted to hide the fact that such assets were going to third parties, as set forth in your Complaint specifically in Paragraph 11.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 7:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the phrases "describe in detail," "otherwise contend," "supports, evidences, and/or establishes," and "in turn"; and it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033).

Without waiving these and any other objections, Responding Party responds as follows:

Just as Debtor was placed into an involuntary Chapter 11 bankruptcy, Andrew Hantges, in his capacity as trustee for the HCET and without disclosure to the Trustee (at a time when the HCET's counsel and the Trustee's counsel were negotiating a stipulation concerning restrictions on the HCET's dissipation of assets pending the Trustee's investigation), caused the HCET to withdraw $159,000 from the HCET bank account by way of a cashier's check on or about July 12, 2007. In turn, Andrew Hantges attempted to hide the fact that such assets were going to third parties by using the cashier's check to cause four different cashier's checks to be issued to his brothers for extravagant purchases (such as for a second brand new BMW in two years, at a cost of $65,000, for Brenden Hantges) and to counsel for the HCET and Debtor. These transfers were not revealed by Andrew Hantges or his counsel until after Responding Party's counsel pointed them out in correspondence with Andrew Hantges' counsel. The transfers resulted in the HCET having almost no liquidity whatsoever.

In addition to correspondence between Artemus Ham and Responding Party's counsel, which is equally available to the Propounding Parties, documents supporting the allegations set forth in Paragraph 11 have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges, and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 8:**

Please identify and describe in detail each and every fact, document and/or communication which you believe or otherwise contend supports, evidences and/or establishes that Debtor, Blanchard, Loob, and Andrew Hantges acted in concert with; knowingly and substantially aided and abetted; assisted; encouraged; conspired with; authorized, requested, commanded, ratified or recklessly tolerated the statements and action of each other in order to engage in a scheme to defraud the creditors of Debtor and his bankruptcy estate as set forth in your Complaint, specifically paragraph 34.

In answering this Interrogatory, please identify and state in detail communications made, the person who made the communication, the place and the time that the communication was made, the identity of the person to whom the communication was made and the substance of the communication.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 8:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the term "substance" and the phases "describe in detail," "otherwise contend," and "supports, evidences and/or establishes"; it calls for information protected by the attorney work-product doctrine and attorney-client privilege in that it seeks information, including

privileged conversations and analysis, regarding liability allegations; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it calls for a legal conclusion. Without waiving these and any other objections, Responding Party responds as follows:

The Debtor, Blanchard, Loob, and Andrew Hantges all played a part in the abuse of the HCET. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**LUCIUS BLANCHARD.**

Blanchard served as the HCET's trustee until on or about November 10, 2006. Jamie Linn Wise was a Grantor of the HCET (along with Debtor). However, the Trustee is informed and believes that Blanchard did not provide Ms. Wise with information regarding the HCET as required by the HCET's formation documents. The Trustee is further informed and believes, and based thereon alleges, that Blanchard's failure to provide HCET-related information to Ms. Wise formed the purported basis for a potential lawsuit threatened against Blanchard by Ms. Wise, which led to his resignation and the appointment of Andrew Hantges as trustee for the HCET. The Trustee is further informed and believes, and on that basis alleges, that Debtor controlled Blanchard's actions as nominal trustee of the HCET, and that Blanchard did exactly as Debtor instructed. As an example, Blanchard would pre-sign batches of blank checks, which he then gave to Debtor to later fill in the payee and amount as determined unilaterally by the Debtor.

On November 24, 2003, Garth McBride, accountant for the HCET, sent an e-mail to Debtor's e-mail account at one of his business entities, USA Capital. The "Subject" line on the e-mail read "Hantges Children education trust" and stated "Tom, I'm sending you this request for information **first** to review – I will forward parts or all of it to Luke Blanchard and Jamie upon your approval. Vicki says she doesn't have any of the information." (emphasis in

original) Then, under the heading **"Hantges Children's Education Trust Items Needed"** (emphasis in original) is a list of items including bank and investment account statements for periods between 1997 and 2003, expenses from 1997 to 2003 and loan documents and payoff statements for the "Hantges House Loan" and for HBM Holdings, LLC (all periods in which Blanchard served as Trustee for the Education Trust).

**<u>Blanchard and Debtor's Misuse of the Hantges Children's Education Trust.</u>**

Blanchard caused the HCET to invest funds in third-party entities that Debtor controlled and/or directed, or in which Debtor held a direct or indirect financial interest. These entities include, among others, Reno South Meadows, LLC; HBM Holdings, LLC; Tanamera Holding Company, Inc.; South Meadows Apartments, LLC; MET Partners, LLC; and Eagle Ranch. Those third-party entities would then funnel money back to Debtor via other entities controlled and directed by Debtor as, *inter alia*, management fees, commissions, and profits.

For example, almost immediately after Blanchard became the trustee of the HCET, Debtor and Blanchard conspired to utilize the HCET to give them control over real estate projects. In June 1997, Debtor and Blanchard used the HCET to invest in a real estate project in Victorville, California through an entity called Eagle Ranch, LLC ("Eagle Ranch"). With a minimal investment, the HCET became an owner of MET Partners LLC, which was maneuvered to obtain 27% ownership interest in the Eagle Ranch project, while several other ownership changes and shifts resulted in Palomino Partners (wholly owned by Blanchard) owning 48% of Eagle Ranch and USAIP (owned 58% by Debtor) eventually owning another 10% of Eagle Ranch. USA Commercial Real Estate Group, for which Debtor served as President and of which he owned 60%, served as managing member of Eagle Ranch.

As a result of the foregoing, Debtor and Blanchard used their joint control of the HCET to control the Eagle Ranch project and placed money held in the HCET into Eagle Ranch. Money derived from the Eagle Ranch investment later flowed into the HCET. By exercising that control over Eagle Ranch (and the HCET's assets that had been transferred into Eagle

Ranch), Debtor derived significant fees, commissions, and profits from the project for himself and the HCET. Blanchard also derived millions of dollars in profits from the project either directly or indirectly into entities he owned or controlled.

In October 1997, Debtor and Blanchard used the HCET to invest in the South Meadows real estate project near Reno, Nevada. After several ownership changes and shifts and with a minimal investment, the HCET became an owner of Tanamera Holding Company, Inc., HBM Holdings LLC, and Reno South Meadows LLC, which entities collectively owned two-thirds of the project, while the Lucius Blanchard Children's Irrevocable Trust (controlled by Debtor, who served as trustee) and Palomino Partners (wholly owned by Blanchard) collectively owned the other one-third interest. Debtor served as managing member of Tanamera Holding Company, Inc., which in turn was the sole managing member of South Meadows Apartments, LLC. Debtor also served as managing member of Tanamera Management, LLC, the property manager of South Meadows Apartments, LLC.

As a result of the foregoing, Debtor and Blanchard used their joint control of the HCET to control the South Meadows Apartments project and placed cash from the HCET into the South Meadows Apartments project. By exercising that control over the South Meadows apartment project (and the assets in the HCET that had been transferred into the South Meadows Apartments project), Debtor derived significant fees and commissions for himself and the HCET. Blanchard also derived millions of dollars of profits from the project, either directly or indirectly through entities he owned or controlled.

Blanchard caused the HCET to invest funds in third-party entities that Debtor controlled and directed, or in which Debtor held a direct or indirect financial interest. These entities include, among others, Reno South Meadows, LLC; HBM Holdings, LLC; Tanamera Holding Company, Inc.; South Meadows Apartments, LLC; MET Partners, LLC; and Eagle Ranch. Those third-party entities would then funnel money back to Debtor via other entities controlled and directed by Debtor as, *inter alia*, management fees, commissions, and profits.

The South Meadows Apartment deal evidences Debtor and Blanchard's use of their

numerous entities to improperly shuffle assets for their own benefit. For example, the Offering Memorandum for South Meadows Apartments, LLC provides the following organizational web:




Debtor is the Principal of "Tanamera Management, LLC" (one of several "Tanamera" entities), which received substantial management fees and commissions for serving as the "Property Manager" for South Meadows Apartments, LLC.

Blanchard, his related entities, and related individuals have financially benefited from Blanchard's and Debtor's knowing and willful abuse of one-another's trusts for their own gain. For example, on March 14, 2006, South Meadows Apartments, LLC caused three checks to be paid to the Blanchard Children's Irrevocable Trust (which, four years earlier, had invested at least $179,000 in South Meadows Apartments, LLC) in the amounts of $526,293.46, $328,314.21, and $2,196,021.91. Approximately one month later, Debtor (as trustee) caused the Blanchard Children's' Irrevocable Trust to pay out the following amounts:

- $300,000 to Blanchard as "Refund for Taxes";
- $350,000 to Blanchard as "Real Estate Loan";
- $200,000 to Sarah Blanchard to "Buy Condo"; and

- $350,000 to Anthony Ausband (a principal of Las Vegas Skin and Cancer Clinics, with which Blanchard is currently affiliated) and Eva Liang for reasons unknown.

Blanchard also, at Debtor's direction, authorized the use of HCET funds to purchase the house in which Debtor and his ex-wife lived. When his ex-wife asked about the need to repay the HCET, Debtor responded that there was no need to do so because "that would be like paying ourselves." Yet, once Debtor's ex-wife filed for divorce, Debtor told her that he could evict her because she had not repaid the HCET for the money used to buy the house.

**ANDREW HANTGES.**

On May 29, 2007, an involuntary Chapter 11 Petition was filed against Debtor. On June 22, 2007, this Court entered an Order For Relief in the involuntary bankruptcy case, and approved the appointment of Michael W. Carmel as Chapter 11 Trustee for Debtor's estate. On July 27, 2007, the trustee of the HCET, Andrew Hantges, and Artemus Ham, counsel for the HCET, entered into a stipulation with the Trustee, whereby the parties thereto agreed that dispositions out of the HCET would be restricted pending the Trustee's review of HCET transactions. The Court entered an Order Authorizing and Approving the Stipulation on August 23, 2007.

Just as Debtor was placed into an involuntary Chapter 11 bankruptcy, Andrew Hantges, in his capacity as trustee for the HCET and without disclosure to the Trustee (at a time when the HCET's counsel and the Trustee's counsel were negotiating the aforementioned stipulation), caused the HCET to withdraw $159,000 from the HCET's bank account by way of a cashier's check on or about July 12, 2007. In turn, he attempted to hide the fact that such assets were going to third parties by using that cashier's check to cause four different cashier's checks to be issued to his brothers for extravagant purchases (such as for a second brand new BMW in two years, at a cost of $65,000, for Brenden Hantges) and to counsel for the HCET and Debtor. These transfers were not revealed by Andrew Hantges or his counsel until after Responding Party's counsel pointed them out. The transfers resulted in the HCET having almost no

liquidity whatsoever. Fortunately, a Treasury Bond in the amount of approximately $2.4 million could not be surrendered without penalty and therefore remains in the account.

On or about November 5, 2007, Andrew Hantges, Artemus Ham, and the Trustee entered into a second stipulation extending the period to January 15, 2008 for the Trustee to continue to review all HCET transactions while dispositions from the HCET were restricted. The Court entered an Order Authorizing and Approving the Stipulation on or about November 6, 2007.

As of January 2008, the HCET's financial accounts held approximately $2.5 million, which is well more than necessary to pay for Debtor's children's educations and maintenance. Indeed, Andrew Hantges is older than 30 years of age, has graduated from college, is no longer in school, and is gainfully employed. Nevertheless, Andrew Hantges, like his brothers, has improperly benefited from the HCET's assets and received over $1 million (at a minimum) in transfers from the HCET. The HCET also holds valuable ownership interests in other entities created by Debtor.

At a Rule 2004 Examination in a related bankruptcy case, Andrew Hantges demonstrated very little knowledge about the HCET's affairs or assets as they existed prior to his appointment as trustee in 2006 or otherwise. In fact, when specifically asked for HCET-related information and documents by the Trustee's counsel in late 2007, counsel for the HCET stated that such information would be in Blanchard and/or Blanchard's counsel's possession – despite the fact that Blanchard was no longer the trustee for the HCET. Yet, when Blanchard later testified at his 2004 examination in a related bankruptcy case, he lacked knowledge of significant HCET-related matters and transactions – despite the millions of dollars flowing through the Education Trust – and has refused to provide any documents to the Trustee in response to document requests served in this Action.

In fact, when the Trustee and his counsel subsequently questioned the HCET's counsel regarding the HCET's past financial affairs and tax returns, Debtor was copied on multiple emails sent by the HCET's accountant and counsel.

**VICTORIA LOOB.**

Victoria Loob was intricately involved in Debtor's business affairs, including the affairs of the HCET. She worked for various entities controlled by the Debtor, served as the notary for the Debtor's companies and investments, including the HCET (her signature and/or notary seal appears on multiple documents involving the HCET, including documents evidencing the use of HCET funds to purchase the house of Debtor and his former wife), managed the HCET's books, records, and day-to-day operations, assisted in the transfer of funds to the HCET, and received compensation and gifts from the Debtor and his entities for her services. Indeed, Loob assisted the Debtor in creating and maintaining his intricate web of entities, including the HCET, which he used to defraud his creditors.

For example, a Wells Fargo check in the amount of $30,000.00 from a USA Commercial Mortgage Company account was deposited into an Education Trust account at Wells Fargo on or about June 22, 2001. The check was made payable to the order of "Hantges Children's Education Trust, Lucius Blanchard TTEE," and was signed by Victoria Loob.

Other relevant facts are set forth in Responding Party's Complaint, and documents supporting his claims for relief (including the allegations at issue in this Interrogatory) have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges, and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 9:**

Please identify and describe in detail each and every fact, document and/or communication, as set forth in your Complaint, specifically paragraph 75, which you believe or otherwise contend supports, evidences and/or establishes that:

(i) Debtor is directing and controlling the HCET's activities;

(ii) the HCET's operational formalities are not being followed, and in fact are being directly contravened;

(iii) Debtor broke the sanctity of the HCET by withdrawing or directing HCET assets for his own benefit; and

(iv) the HCET is nothing more than an illusory sham trust and Debtor's alter ego used in an attempt to secrete Debtor's assets from his creditors.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 9:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the phrases "describe in detail," "otherwise contend," and "supports, evidences, and/or establishes"; it calls for information protected by the attorney work-product doctrine, attorney-client privilege, and joint-defense privilege, in that it seeks information, including privileged conversations and analysis, regarding the sham nature of the HCET; it is duplicative of previously propounded discovery; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); it seeks a legal conclusion, as opposed to the application of law to fact; and the allegation in paragraph 75 of the Complaint specifically states that it is based on other allegations made in the Complaint.

Without waiving these and any other objections, Responding Party responds as follows:

While copious evidence establishes that Debtor directed and controlled the HCET's activities in the past, the HCET's activities are now controlled by Wells Fargo Bank, N.A., the current trustee for the HCET. Furthermore, pursuant to Stipulation, Responding Party has a certain degree of oversight of the HCET. Likewise, the current operation of the HCET by Wells Fargo Bank, N.A. is monitored by Responding Party.

As to the remainder of this Interrogatory, Responding Party incorporates by reference his responses to Interrogatory Numbers 6, 7, and 8, and the Complaint in this Action.

Documents supporting Responding Party's claims for relief (including the allegations at issue in this Interrogatory) have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges, and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 10:**

Please describe the billing practices of the Chapter 11 Responding Party and the Chapter 11 Responding Party's counsel as it relates to the subject Adversary Proceeding and Complaint, including but not limited to a breakdown of all attorney's fees, costs and expenses expending for or relating to the HCET prior to and subsequent to the filing of the Adversary Complaint.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 10:**

Responding Party objects to this Interrogatory on the following grounds: it is vague and ambiguous as to the phrases "billing practices" and "expending for"; it calls for information protected by the attorney work-product doctrine and the attorney-client privilege; it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence; it seeks information that is a matter of public record and, therefore, equally accessible to Defendant.

**INTERROGATORY NO. 11:**

Please identify and describe with particularity each and every contribution Thomas A. Hantges and/or Jamie Wise Hantges, Jamie Linn Wise or Jamie Hantges made to the HCET, including the dates, amounts and circumstances of each contribution.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 11:**

Responding Party objects to this Interrogatory on the following grounds: it is vague and ambiguous as to the terms "contribution" and "circumstances," and the phrase "describe with

particularity"; it is overbroad in that it is unlimited in temporal scope; and it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033).

Without waiving these and any other objections, Responding Party responds as follows:

Responding Party is currently investigating contributions made to the HCET. Copies of purported U.S. Gift Tax Returns ostensibly reflecting certain such contributions have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents. Responding Party has found no evidence that the purported U.S. Gift Tax Returns have been filed with any taxing authority.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 12:**

Please identify and describe with particularity each and every disbursement of funds from the HCET alleged to be fraudulent, void or voidable by the Responding Party, including the dates and circumstances of each disbursement of funds. Please identify and describe:

(i) the bases for determining that a disbursement is fraudulent, void, or avoidable;

(ii) the individual(s) and/or entity(ies) for whose benefit the alleged fraudulent, void or voidable disbursements were made;

(iii) the individual(s) and/or entity(ies) who received the alleged fraudulent, void, or avoidable disbursements.

Please identify and describe with particularity each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 12:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is overly broad in temporal scope; it is vague and ambiguous as to the terms "circumstances," "avoidable," "voidable" (which has a different meaning than "avoidable"), and "benefit," as well as the phrase "describe with particularity"; it calls for information protected by the attorney work-product doctrine, attorney-client privilege, and joint-defense privilege, in that it seeks to uncover counsel's legal analysis regarding disbursements and counsel's analysis as to the evidence that Responding Party intends on offering or introducing as an exhibit at trial; it is duplicative of previously propounded discovery; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it seeks a legal conclusion, as opposed to the application of law to fact.

Subject to and without waiving these and any other objections, Responding Party responds as follows:

All disbursements of funds (and all rents, offspring, profits, proceeds, product of such funds) from the HCET to Debtor's co-defendants must be returned to Debtor's estate, as said trust is an illusory sham and alter ego of Debtor and its assets are truly Debtor's assets.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 13:**

Please identify and describe with particularity each and every investment of funds of the HCET made by a trustee of the HCET, including the dates, amounts and circumstances of each investment of funds.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the term "circumstances" and the phrases "describe with particularity," and "investment of funds"; it is overly broad as to time and scope; it seeks information that is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence; it seeks information equally available to Propounding Parties, as such information is held by a third party; and it is unduly burdensome as to scope.

Subject to and without waiving these and any other objections, Responding Party responds as follows: The HCET has made several investments, including, without limitation, investments in real estate projects, loans, investments related to the casino industry, and investments in financial brokerage accounts. Documents evidencing such investments have been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 14:**

Please identify each and every investment of funds of the HCET identified in YOUR OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 13 herein that you allege, deem or consider to be improper, inappropriate, fraudulent or otherwise in violation of the terms of the HCET, and with respect to each investment identify and describe with particularity any and all facts supporting such allegation.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 14:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is overly broad as to temporal scope; it is vague and ambiguous as to the terms "deem," "consider," "improper," "inappropriate," and the phrase "describe with particularity"; it calls for information protected by the attorney work-product doctrine, attorney-client privilege, and joint-defense privilege, in that it seeks to uncover counsel's legal analysis regarding the propriety (or lack thereof) of investments by the HCET; it is duplicative of previously propounded discovery; it seeks a legal conclusion, as opposed to the application of law to fact; and it seeks information neither relevant to this Action nor reasonably calculated to lead to the discovery of admissible information.

**INTERROGATORY NO. 15:**

Please identify and describe with particularity each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 15:**

Responding Party objects to this Interrogatory on the following grounds: it is overly broad and burdensome, in that it seeks "each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter"; it is vague and ambiguous as to the term "intend" and the phrase "with particularity"; it calls for information protected by the attorney work-product doctrine, as it seeks counsel's impressions or opinions formed in anticipation of litigation regarding which documents will be used at trial; and it is duplicative of Interrogatory No. 3.

**INTERROGATORY NO. 16:**

Please identify and describe with particularity each and every transfer of funds of the HCET alleged to be fraudulent, void or avoidable by the Responding Party, including the dates and circumstances of each disbursement of funds. Please identify and describe:

(iv) the bases for determining that a transfer is fraudulent, void, or avoidable;

(v) the individual(s) and/or entity(ies) for whose benefit the alleged fraudulent, void or voidable transfers were made;

(vi) the individual(s) and/or entity(ies) who received the alleged fraudulent, void, or avoidable transfers.

Please identify and describe with particularity each and every document that you intend to offer or introduce as an exhibit at the time of trial in this matter.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 16:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is overly broad as to temporal scope; it is vague and ambiguous as to the terms "circumstances," "avoidable," and "transfer," as well as the phrase "describe with particularity"; it calls for information protected by the attorney work-product doctrine and attorney-client privilege, in that it seeks to uncover counsel's legal analysis regarding disbursements and counsel's analysis as to the evidence that Responding Party intends on offering or introducing at trial; it is duplicative of previously propounded discovery; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it seeks a legal conclusion, as opposed to the application of law to fact.

Subject to and without waiving these and any other objections, Responding Party responds as follows:

All transfers of funds to the HCET by Debtor, as well as the transfers from the HCET to Debtor's co-defendants, must be returned to Debtor's estate, as said trust is an illusory sham and alter ego of Debtor and its assets are truly Debtor's assets.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 17:**

Identify any and all fees, commissions and profits Debtor received from the Eagle Ranch, LLC investment as alleged in Paragraph 49 of the Complaint. For each fee, commission or profit, please identify the date and amount such fee, commission or profit was received by Debtor and, if you contend that such fee, commission or profit was improper or based upon an unreasonable amount, please identify the same and specify the amount of fee, commission or profit that you consider reasonable under the circumstances.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 17:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "improper," "unreasonable," and "reasonable," and the phrases "Debtor received" and "received by debtor"; it calls for information protected by the attorney work-product doctrine, in that it seeks to uncover counsel's legal analysis regarding fees derived from the HCET's investment in Eagle Ranch, LLC; it seeks a legal conclusion, as opposed to the application of law to fact; and it seeks information that is neither relevant to the allegations of the Complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these and any other objections, Responding Party responds that he has produced relevant documents concurrently with his responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents. Furthermore, discovery has only recently commenced. Responding Party is currently investigating the subject matter of this Interrogatory, including the HCET's trustee at the relevant time, and certain of Debtor's co-defendants have refused to produce documents in response to Responding Party's Request for Production of Documents. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 18:**

Identify any and all fees and commissions Debtor received from the South Meadows real estate project as alleged in Paragraph 51 of the Complaint. For each fee, commission or profit, please identify the date and amount such fee, commission or profit was received by Debtor and, if you contend that such fee, commission or profit was improper or based upon an unreasonable amount, please identify the same and specify the amount of fee, commission or profit that you consider reasonable under the circumstances.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 18:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "improper," "unreasonable," and "reasonable," and the phrases "Debtor received" and "received by debtor"; it calls for information protected by the attorney work-product doctrine, in that it seeks to uncover counsel's legal analysis regarding fees derived from the HCET's investment in Eagle Ranch, LLC; it seeks a legal conclusion, as opposed to the application of law to fact; and it seeks information that is neither relevant to the allegations of the Complaint, nor reasonably calculated to lead to the discovery of admissible evidence.

Without waiving these and any other objections, Responding Party responds that he has produced relevant documents concurrently with his responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents. Furthermore, discovery has only recently commenced. Responding Party is currently investigating the subject matter of this Interrogatory, including the HCET's trustee at the relevant time, and Debtor's co-defendants have refused to produce documents in response to Responding Party's Request for Production of Documents. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 19:**

Identify any and all facts supporting your allegation that "Debtor instructed Blanchard to cause the Education Trust to invest funds in third-party entities that Debtor controlled and directed, or in which Debtor held a direct or indirect financial interest" as set forth in Paragraph 54 of the Complaint.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 19:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory, in that it seeks "any and all facts" supporting a particular allegation in Responding Party's Complaint; it is overly broad as to temporal scope; and it is vague and ambiguous as to the term "supporting."

Without waiving these and any other objections, Responding Party responds as follows:

Debtor has claimed in his filings with the Court to be penniless and without any substantial assets. Yet, he not only created the HCET, but for years he has influenced, directed, and controlled millions of dollars in assets flowing through the HCET.

Debtor and Blanchard, Debtor's close friend and co-conspirator, have utilized the HCET to engage in sophisticated financial and real estate transactions designed to reap benefits for Debtor and his coconspirators – and occasionally to purchase non-educational, extravagant items for Debtor's children.

Blanchard served as the trustee for the HCET for approximately 10 years. Likewise, Debtor served as the trustee for a similar trust for Blanchard's children. Together, Debtor and Blanchard (under Debtor's direction and control) abused the protections afforded to these trusts to enrich themselves. For example, both Debtor and Blanchard used one another's trusts to invest in Debtor's own real estate vehicles and other entities, through which they received thousands, if not millions, in management fees and returns on investments via Debtor's and Blanchard's affiliated entities.

Debtor controlled and directed Blanchard's conduct as trustee for the HCET. For example, Debtor's affiliated companies maintained the HCET's books and records, and

Debtor's outside accountants at Beadle McBride prepared its tax returns. More particularly, Debtor induced Blanchard to pre-sign batches of blank checks that Debtor would later use, filling in the payee and amount as he unilaterally determined.

The Trustee is informed and believes, and on that basis alleges, that Debtor controlled Blanchard's actions as nominal trustee of the HCET, and that Blanchard did exactly as Debtor instructed. As an example, Blanchard would pre-sign batches of blank checks, which he then gave to Debtor to later fill in the payee and amount as determined solely by Debtor.

On November 24, 2003, Garth McBride, accountant for the HCET, sent an e-mail to Debtor's e-mail account at one of his business entities, USA Capital. The "Subject" line on the e-mail read "Hantges Children education trust" and stated "Tom, I'm sending you this request for information **first** to review – I will forward parts or all of it to Luke Blanchard and Jamie upon your approval. Vicki says she doesn't have any of the information." (emphasis in original) Then, under the heading "**Hantges Children's Education Trust Items Needed**" (emphasis in original) is a list of items including bank and investment account statements for periods between 1997 and 2003, expenses from 1997 to 2003 and loan documents and payoff statements for the "Hantges House Loan" and for HBM Holdings, LLC (all periods in which Blanchard served as Trustee for the HCET).

Blanchard caused the HCET to invest funds in third-party entities that Debtor controlled and directed, or in which Debtor held a direct or indirect financial interest. These entities include, among others, Reno South Meadows, LLC; HBM Holdings, LLC; Tanamera Holding Company, Inc.; South Meadows Apartments, LLC; MET Partners, LLC; and Eagle Ranch. Those third-party entities would then funnel money back to Debtor via other entities controlled and directed by Debtor as, *inter alia*, management fees, commissions, and profits.

For example, almost immediately after Blanchard became the trustee of the Education Trust, Debtor and Blanchard conspired to utilize the HCET to give them control over real estate projects. In June 1997, Debtor and Blanchard used the HCET to invest in a real estate project in Victorville, California through an entity called Eagle Ranch, LLC ("Eagle Ranch").

With a minimal investment, the HCET became an owner of MET Partners LLC, which was maneuvered to obtain 27% ownership interest in the Eagle Ranch project, while several other ownership changes and shifts resulted in Palomino Partners (wholly owned by Blanchard) owning 48% of Eagle Ranch and USAIP (owned 58% by Debtor) eventually owning another 10% of Eagle Ranch. USA Commercial Real Estate Group, for which Debtor served as President and of which he owned 60%, served as managing member of Eagle Ranch LLC.

As a result of the foregoing, Debtor and Blanchard used their joint control of the HCET to control the Eagle Ranch project and placed money held in the HCET into Eagle Ranch. Money derived from the Eagle Ranch investment later flowed into the HCET. By exercising that control over Eagle Ranch (and the HCET' s assets that had been transferred into Eagle Ranch), Debtor derived significant fees, commissions, and profits from the project for himself and the HCET. Blanchard also derived millions of dollars in profits from the project either directly or indirectly into entities he owned or controlled.

In October 1997, Debtor and Blanchard used the HCET to invest in the South Meadows real estate project near Reno, Nevada. After several ownership changes and shifts and with a minimal investment, the HCET became an owner of Tanamera Holding Company, Inc., HBM Holdings LLC, and Reno South Meadows LLC, which entities collectively owned two-thirds of the project, while the Lucius Blanchard Children's Irrevocable Trust (controlled by Debtor, who served as trustee) and Palomino Partners (wholly owned by Blanchard) collectively owned the other one-third interest. Debtor served as managing member of Tanamera Holding Company, Inc., which in turn was the sole managing member of South Meadows Apartments, LLC. Debtor also served as managing member of Tanamera Management, LLC, the property manager of South Meadows Apartments, LLC.

As a result of the foregoing, Debtor and Blanchard used their joint control of the HCET to control the South Meadows Apartments project and placed cash from the HCET into the South Meadows Apartments project. By exercising that control over the South Meadows apartment project (and the assets in the HCET that had been transferred into the South

Meadows Apartments project), Debtor derived significant fees and commissions for himself and the HCET. Blanchard also derived millions of dollars of profits from the project, either directly or indirectly through entities he owned or controlled.

Blanchard caused the HCET to invest funds in third-party entities that Debtor controlled and directed, or in which Debtor held a direct or indirect financial interest. These entities include, among others, Reno South Meadows, LLC; HBM Holdings, LLC; Tanamera Holding Company, Inc.; South Meadows Apartments, LLC; MET Partners, LLC; and Eagle Ranch. Those third-party entities would then funnel money back to Debtor via other entities controlled and directed by Debtor as, *inter alia*, management fees, commissions, and profits.

The South Meadows Apartment deal evidences Debtor and Blanchard's use of their numerous entities to improperly shuffle assets for their own benefit. For example, the Offering Memorandum for South Meadows Apartments, LLC provides the following organizational web:




Debtor is the Principal of "Tanamera Management, LLC" (one of several "Tanamera" entities), which received substantial management fees and commissions for serving as the "Property Manager" for South Meadows Apartments, LLC.

Blanchard, his related entities, and related individuals have financially benefited from Blanchard's and Debtor's knowing and willful abuse of one-another's trusts for their own gain. For example, on March 14, 2006, South Meadows Apartments, LLC caused three checks to be paid to the Blanchard Children's Irrevocable Trust (which, four years earlier, had invested at least $179,000 in South Meadows Apartments, LLC) in the amounts of $526,293.46, $328,314.21, and $2,196,021.91. Approximately one month later, Debtor (as trustee) caused the Blanchard Children's' Irrevocable Trust to pay out the following amounts:

- $300,000 to Blanchard as "Refund for Taxes";
- $350,000 to Blanchard as "Real Estate Loan";
- $200,000 to Sarah Blanchard to "Buy Condo"; and
- $350,000 to Anthony Ausband (a principal of Las Vegas Skin and Cancer Clinics, with which Blanchard is currently affiliated) and Eva Liang for reasons unknown.

Blanchard also, at Debtor's direction, authorized the use of HCET funds to purchase the house in which Debtor and his ex-wife lived. When his ex-wife asked about the need to repay the HCET, Debtor responded that there was no need to do so because "that would be like paying ourselves." Yet, once Debtor's ex-wife filed for divorce, Debtor told her that he could evict her because she had not repaid the HCET for the money used to buy the house.

Several payments of investment returns to the HCET were sent "care of" entities that Debtor controlled. For example, on or about September 3, 2003, Correspondent Services Corporation issued a check to Blanchard (as trustee for the HCET) for $648,232.44, but sent that check to the "care of" Debtor-affiliated entity "USA Financial." In fact, on or about April 12, 2007, Correspondent Services Corporation caused a check to be issued to the HCET for $136,700 and listed the HCET's address as 4484 South Pecos Road – the same business address for many of Debtor's entities, but not the address of the then trustee of the HCET.

Other relevant facts are set forth in Responding Party's Complaint, and documents supporting his claims for relief (including the allegations at issue in this Interrogatory) have

been produced concurrently with Responding Party's responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges, and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 20:**

Identify any and all entities that Debtor controlled or directed management fees, commissions and profits to be paid from the entities in which the HCET invested funds as alleged in Paragraph 54 of the Complaint. For each management fee, commission or profit, please identify the date, amount and identity of the entity receiving such fee, commission or profit, and, if you contend that such fee, commission or profit was improper or based upon an unreasonable amount, please identify the same and specify the amount of fee, commission or profit that you consider reasonable under the circumstances.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 20:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory, in that it seeks the identity of "any and all entities that Debtor controlled or directed management fees, commissions and profits to be paid from the entities in which the HCET invested funds" as well as a host of other information; it is vague and ambiguous as to the terms "unreasonable" and "reasonable," and the phrase "entities that Debtor controlled or directed management fees, commissions and profits to be paid from the entities in which the HCET invested funds," which is not the language used by paragraph 54 of the Complaint; it calls for information protected by the attorney work-product doctrine and attorney-client privilege, in that it seeks information, including privileged conversations and analysis; it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence; it is compound,

disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it calls for a legal conclusion.

Waiving these and any other objections, Responding Party responds as follows

The HCET invested funds in third-party entities that Debtor controlled and directed, or in which Debtor held a direct or indirect financial interest. These entities include Reno South Meadows, LLC; HBM Holdings, LLC; Tanamera Holding Company, Inc.; South Meadows Apartments, LLC; MET Partners, LLC; and Eagle Ranch. The identity of other pertinent entities and the amounts transferred to such entities is currently the subject of Responding Party's investigation. Discovery has only recently commenced. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 21:**

Identify any and all facts supporting your allegation contained within Paragraph 57 of the Complaint that the investments made by the HCET, including those investments in Reno South Meadows, LLC and Eagle Ranch, LLC, were detrimental and/or how those investments caused harm to Debtor's creditors.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 21:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it calls for information protected by the attorney work-product doctrine and attorney-client privilege, in that it seeks counsel's analysis regarding the HCET's investments in Reno South Meadows, LLC and Eagle Ranch, LLC; and it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033).

Waiving these and any other objections, Responding Party responds as follows: Debtor's and Blanchard's diversion of funds held by the HCET – *i.e.*, funds which truly

belonged to Debtor's estate – necessarily transferred Debtor's assets out of his personal possession and out of the reach of Debtor's creditors.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 22:**

Identify any and all facts that support the allegation contained within Paragraph 61 of the Complaint that the contributions Debtor made to the HCET "were far more than necessary to pay for the children's education and maintenance," and were "meant to hinder, delay, or defraud Debtor's creditors."

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 22:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it calls for information protected by the attorney work-product doctrine and attorney-client privilege, in that it seeks information, including privileged conversations and analysis; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it calls for a legal conclusion.

Without waiving these and any other objections, Responding Party responds as follows: at least $500,000 appears to have been placed into the HCET by Debtor and/or his former wife, after it appears Debtor attended a seminar on shielding assets from creditors via, *inter alia,* placing them in Children's Trusts. The amount of funds in the HCET grew to exceed $3 million, which undeniably exceeds the amount of money necessary to sustain the four children's educational needs. Moreover, large sums of monies were withdrawn out of the HCET under suspicious circumstances in close proximity to the time period that Debtor's involuntary

Chapter 11 bankruptcy was filed. The evidence indicates that Debtor placed his personal assets into the HCET in an effort to shield them from his creditors.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 23:**

Identify any and all deposits made to the HCET by "related entities that are Debtor's creditors" as set forth in Paragraph 62 of the Complaint, including the date of the deposit, the amount of the deposit, the entity transferring, contributing or distributing the funds making up such deposit.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 23:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "transferring," "contributing, or "distributing"; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it calls for a legal conclusion.

Without waiving these and any other objections, Responding Party responds as follows: a Wells Fargo check in the amount of $30,000.00 from a USA Commercial Mortgage Company account was deposited into an account held by the HCET at Wells Fargo on or about June 22, 2001. Discovery has only recently commenced. Responding Party is currently investigating other transfers to the HCET, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 24:**

Identify any and all facts that support the allegation contained within Paragraph 62 of the Complaint that certain deposits made into the HCET were made with the intent of hindering, delaying, and defrauding Debtor's creditors.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 24:**

Responding Party objects to this Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the terms "transferring," "contributing, or "distributing"; it is compound, disjunctive, and has subparts, causing the total number of Interrogatories to exceed 25 in violation of FRCP 33 (applicable through FRBP 7033); and it calls for a legal conclusion, as opposed to the application of law to fact.

Without waiving these and any other objections, Responding Party responds as follows: Debtor contends to be penniless in filings with the court. Yet, the HCET contains millions of dollars. Debtor's practice was to manipulate the multiple entities under his control in order to shield his assets from creditors. By secreting his assets belonging to his creditors to the HCET, he thereby deprived those creditors of such assets.

Responding Party incorporates by reference his responses to Interrogatory Numbers 6, 7, 8 and 9, and directs Propounding Parties to the documents produced concurrently with his responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 25:**

Identify any and all facts that support the allegation contained within Paragraph 67 of the Complaint that the "proper trust formalities have not been followed with respect to the Education Trust."

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 25:**

Responding Party objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the term "support"; and it calls for a legal conclusion.

Subject to and without waiving these and any other objections, Responding Party incorporates by reference his response to Interrogatory numbers 6, 7, 8, 9, and 24. Furthermore, at least two of the trustees for the HCET did not abide by obligations imposed by relevant Nevada law, including the obligation to keep and render accountings. Blanchard – who served as trustee for the HCET for almost a decade –has refused to provide Responding Party with any documentation whatsoever. Andrew Hantges also had very little documentation regarding the HCET, and directed Responding Party to Blanchard for such information. In fact, much of the HCET's day-to-day activity was handled and/or directed by Debtor (or his affiliated entities).

Responding Party directs Propounding Parties to the documents produced concurrently with his responses to Defendants Andrew Hantges, Brenden Hantges, Matthew Hantges and Robert Hantges' First Set of Requests for Production of Documents.

Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**INTERROGATORY NO. 26:**

Identify any and all "other suspicious and fraudulent transfers" known to YOU but not otherwise identified in the Complaint as set forth in Paragraph 74 of the Complaint.

**OBJECTIONS AND RESPONSE TO INTERROGATORY NO. 26:**

Responding Party objects to this Interrogatory on the grounds that it exceeds the limit of 25 interrogatories allowed pursuant to FRCP 33(a)(1) (applicable through FRBP 7033). Responding Party further objects to the Interrogatory on the following grounds: it is a harassing, overly broad, burdensome, and premature contention interrogatory; it is vague and ambiguous as to the term "support"; and it calls for a legal conclusion.

Date: July 1, 2008

Respectfully Submitted,

Jeffrey M. Goldman
Steptoe & Johnson LLP
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
*Attorneys for Michael W. Carmel, Chapter 11 Trustee for the Estate of Thomas A. Hantges*

7/1

Francis J. Burke, Jr., Esq. (AZ Bar No. 010570)
(CA Bar No. 75970)
*(Admitted Pro Hac Vice)*
Robbin L. Itkin, Esq., (CA Bar No. 117105)
*(Admitted Pro Hac Vice)*
Jeffrey M. Goldman, Esq. (CA Bar No. 233840)
*(Admitted Pro Hac Vice)*
**STEPTOE & JOHNSON LLP**
2121 Avenue of the Stars, Suite 2800
Los Angeles, CA 90067
Phone: (310) 734-3200
Fax: (310) 734-3300
Email: fburke@steptoe.com
Email: ritkin@steptoe.com
Email: jgoldman@steptoe.com

Brian D. Shapiro, Esq. (NV Bar No. 5772)
Law Office of Brian D. Shapiro, LLC
624 S. 9th Street
Las Vegas, NV 89101
Phone: (702) 385-5266
Fax: (702) 382-2967
Email: bshapiro@brianshapirolaw.com

*Attorneys for Michael W. Carmel,*
*Chapter 11 Trustee for the Estate of Thomas A. Hantges*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br>THOMAS A. HANTGES,<br>Debtor. | Case No.: 07-13163-LBR<br>Chapter 11 |
| MICHAEL W. CARMEL, Chapter 11 Trustee for the Estate of Thomas A. Hantges,<br>Plaintiff,<br>v.<br>THOMAS A. HANTGES, et al.<br>Defendants. | Adversary Proceeding No. 08-01002-MKN<br>**PLAINTIFF MICHAEL W. CARMEL'S RESPONSE TO DEFENDANTS, ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES AND ROBERT HANTGES' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** |

PROPOUNDING PARTY: DEFENDANTS, ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES AND ROBERT HANTGES

RESPONDING PARTY: MICHAEL W. CARMEL, CHAPTER 11 TRUSTEE FOR THE ESTATE OF THOMAS A. HANTGES

SET NUMBER: ONE

## PRELIMINARY STATEMENT

Plaintiff Michael W. Carmel, Chapter 11 Trustee (the "Responding Party") for the Estate of Thomas A. Hantges ("Debtor'), has not yet completed his discovery or investigation of the facts relevant to the claims and defenses asserted in the Complaint (Docket No. 1) (the "Action"). Accordingly, the responses provided herein are offered subject to, and without prejudice to or waiver of, the Responding Party's rights to: (a) amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained; and (b) to introduce at trial or in any hearing before the Court any testimonial, documentary, or other form of evidence of facts yet to be discovered or unintentionally omitted herein.

## GENERAL OBJECTIONS

1. The Responding Party has not completed his discovery or investigation of the facts relating to this Action or preparation for trial. The responses contained herein are based only upon the information and documents presently available to and known by the Responding Party. Nothing contained herein shall be used to preclude the Responding Party from further research and investigation of the facts or from presentation of the results of that research and investigation to the Court and/or the trier of fact at any hearing or at the time of trial.

2. The following responses are provided without prejudice to the right of the Responding Party to produce and introduce at any hearing or at the time of trial any subsequently discovered evidence relating to the proof of presently known material facts, and to

produce and introduce all evidence whenever discovered relating to the proof of subsequently discovered material facts. The Responding Party reserves the right to refer to, conduct discovery with, reference to, or offer into evidence at any hearing or at the time of trial, any and all documents and things notwithstanding the responses and objections interposed herein.

3. To the extent that any request for production ("Request") has not been objected to, the Responding Party has used reasonable diligence to obtain documents and things responsive to the Requests responded to herein, based on examination of those files that may reasonably be expected to yield such documents and things and interviews with those individuals reasonably expected to have such documents and things. To the extent that the propounding party seeks to require the Responding Party to do more than the foregoing, the Requests are objected to on the grounds that they are not relevant to the claims or defenses of any party to this Action, and would subject the Responding Party to oppression, harassment, and undue burden and expense not commensurate with any legitimate discovery need.

4. The Responding Party objects to each and every Request on the grounds that Defendants' Request for Documents is made pursuant to Rule 34 of the Nevada Rules of Civil Procedure, and not pursuant to the Federal Rules of Civil Procedure ("FRCP") applicable through the Federal Rules of Bankruptcy Procedure ("FRBP).

5. The Responding Party objects to each and every Request to the extent that it seeks disclosure of information that is protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and pursuant to any other applicable privilege or protection, or information otherwise protected from discovery. The Responding Party will not undertake to produce any such privileged or protected information, and nothing contained herein is intended as, or shall be deemed, a waiver of any attorney-client privilege, attorney work product protection, or any other applicable privilege.

6. The Responding Party objects to each and every Request to the extent it is overbroad, unduly burdensome, unreasonable, vexatious, harassing and oppressive, in that it seeks information that is not relevant to the claims or defenses of any party to this Action. By responding to any of the Requests, the Responding Party will not undertake to provide

documents that are not relevant to the claims or defenses of any party to this Action, and the Responding Party expressly disavows any obligation or undertaking not interposed by FRCP applicable through the FRBP and pertinent case law.

7. The Responding Party objects to each and every Request to the extent that it seeks information that is protected from disclosure by rights of privacy.

8. To the extent that the Requests purport to require the Responding Party to disclose documents or other materials constituting or containing, in whole or in part, confidential data, proprietary information, or non-public financial information relating or pertaining to the Debtor and/or the Responding Party, the Responding Party objects to each and every Request on the grounds that it: (a) is overbroad, unreasonable, unduly burdensome, vexatious, oppressive and harassing; and (b) seeks information that is protected from disclosure under federal and state law.

9. The Responding Party objects to the "Definitions And Instructions" to the extent that they are inconsistent with, and seek to impose obligations beyond, those imposed under the FRCP applicable through the FRBP.

10. The Responding Party objects to each and every Request to the extent that it is vague, ambiguous, uncertain, unintelligible, overly broad and burdensome. The Responding Party expressly disavows any obligation to respond to the Requests beyond those imposed by the FRCP and the FRBP, and, except as otherwise set forth expressly herein, for purposes of further responding to the Requests, the Responding Party will not undertake to provide information on behalf of any party, entity or person other than the Debtor's Estate.

11. No response contained herein, and no provision of information by the Responding Party in response to any Request, is intended to be, nor shall it be deemed or construed as, an admission of the truth or correctness of any statement, characterization, conclusion, or other matter which may be contained in any Request.

12. The Responding Party objects to each and every Request to the extent that the information requested is at least equally available to Andrew Hantges, Brenden Hantges,

Matthew Hantges and Robert Hantges (collectively, the "Defendants"), or already in their possession or their counsel.

13. The Responding Party hereby expressly reserves his right to supplement or amend this response in the future should the Responding Party discover additional documents or things that may be responsive to the Requests.

14. Each of the following specific responses and objections is subject to the foregoing General Responses and Objections, which shall be incorporated into each specific response (whether or not so stated in the specific response).

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**REQUEST FOR PRODUCTION NO. 1:**

Any and all documents or other tangible evidence referenced to or identified in your responses to Defendants' ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES and ROBERT HANTGES First Set of Interrogatories to Responding Party MICHAEL W. CARMEL served concurrently herewith in this matter.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 1:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 2:**

Any and all documents or other tangible evidence in your possession which supports each of Responding Party's claims set forth in the COMPLAINT.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 2:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information pertaining to individuals, the disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory and/or common law rights to personal privacy and confidentiality. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 3:**

Any and all documents or other tangible evidence, including impeachment and rebuttal evidence, that you intend to introduce into evidence at the time of the trial of this matter.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 3:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

**REQUEST FOR PRODUCTION NO. 4:**

Any and all documents or other tangible evidence that relates to or concerns any of the matters set forward in any of the pleadings filed by any of the parties in this matter.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 4:**

Responding Party objects to this Request on the grounds that it is overly broad as to scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks information pertaining to individuals, the disclosure of which would constitute an unwarranted invasion of the affected individuals' constitutional, statutory and/or common law rights to personal privacy and confidentiality. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 5:**

Any and all documents relative to any and all communications you had with Defendants ANDREW HANTGES, BRENDEN HANTGES, MATTHEW HANTGES, and ROBERT HANTGES, their counsel, or counsel to the Responding Party of the HCET, including but not limited to Matthew Callister, Esq. and R. Gardner Jolley, Esq.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 5:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request on the grounds that it is overly broad as to time. Responding Party further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information.

Subject to and without waiving these and any other objections, and to the extent he understands this request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been

produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 6:**

Any and all Documents evidencing, referring to, or relating to YOUR allegation contained in Paragraph 4 of the COMPLAINT that "assets held in the Education Trust have been used to realize millions of dollars more in profits, rents, offspring, and the like."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 6:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is overly broad as to time. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 7:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation contained in Paragraph 5 of the COMPLAINT that "Debtor's abusive conduct compels piercing the veil of the Education Trust."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 7:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 8:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation contained in Paragraph 6 of the COMPLAINT that Debtor "received thousands, if not millions, in management fees and returns on investments via Debtor's and Blanchard's affiliated entities." Responding Party further objects that this Request incorrectly states that paragraph 6 of the Complaint only alleges that only Debtor received management fees and returns on investment.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 8:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive

documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 9:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation contained in Paragraph 7 of the COMPLAINT that "Debtor controlled and directed Blanchard's conduct as Responding Party for the Education Trust."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 9:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record and is otherwise equally accessible to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 10:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation contained in Paragraph 8 of the COMPLAINT that the investments made on behalf of the HCET were improper.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 10:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 11:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation contained in Paragraph 10 of the COMPLAINT that the funds transferred to Andrew Hantges in mid-2005 were transferred at the request of Debtor.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 11:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been

produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 12:**

Any and all Documents evidencing, referring to, relating to, or supporting YOUR allegation that Andrew Hantges improperly received over $400,000 from USA Commercial Mortgage Company, as set forth in Paragraph 10 of the COMPLAINT.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 12:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 13:**

Any and all documents that you claim support your allegations as they relate to Defendant ANDREW HANTGES contained in paragraph 11 of your Complaint.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 13:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants. Responding Party further objects to this Request to the extent that Defendants or their counsel have equal access to such documents in their possession.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 14:**

A copy of any and all emails from Garth McBride or his counsel to Debtor concerning the HCET as referenced in Paragraphs 13 and 41 of the COMPLAINT.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 14:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects that the Request seeks documents equally available to Propounding Parties.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 15:**

A copy of any and all Documents relating to or concerning the HCET that were notarized by Victoria Loob as referenced in Paragraph 28 of the COMPLAINT.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 15:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects that the Request seeks documents equally available to Propounding Parties.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 16:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 30 of the COMPLAINT that the HCET is the alter ego of Debtor.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 16:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 17:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 30 of the COMPLAINT as they relate to Defendant ANDREW HANTGES.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 17:**

Responding Party objects to this Request on the grounds that it is vague, ambiguous, and unintelligible. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request on the grounds

that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants. Responding Party further objects that paragraph 30 of the Complaint foes not reference Andrew Hantges, rendering this Request vague and ambiguous.

**REQUEST FOR PRODUCTION NO. 18:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 40 of the COMPLAINT that "Debtor controlled Blanchard's actions as nominal Responding Party of the Education Trust and that Blanchard did exactly as Debtor instructed."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 18:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is unduly burdensome. Responding Party further objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants. Responding Party further objects to this Request to the extent that it is duplicative.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 19:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 40 of the COMPLAINT that "Blanchard did exactly as Debtor instructed."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 19:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants. Responding Party further objects to this Request on the grounds that it is duplicative of previously propounded discovery.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 20:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 54 of the COMPLAINT that "Debtor instructed Blanchard to

cause the Education Trust to invest funds in third-party entities that Debtor controlled and directed."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 20:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request on the grounds that it is overly broad as to time. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 21:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 57 of the COMPLAINT that the investments made by the HCET, including but not limited to Reno South Meadows, LLC and Eagle Ranch, LLC were improper.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 21:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks private,

privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 22:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 61 of the COMPLAINT that the contributions made by Debtor to the HCET "were far more than necessary to pay for the children's education and maintenance."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 22:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that Defendants have such documents in their possession or that of their counsel.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 23:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 62 of the COMPLAINT that Debtor has caused "certain related entities that are Debtor's creditors . . . to directly deposit funds in the Education's Trust bank account with the intent of hindering, delaying, and defrauding those creditors."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 23:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 24:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 62 of the COMPLAINT that the check made payable to the

HCET from USA Commercial Mortgage Company, dated June 21, 2001, in the amount of $30,000 was deposited into the HCET for the purpose of hindering, delaying and defrauding Debtor's creditors.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 24:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 25:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 73 of the COMPLAINT that on January 15, 2007, a telephonic authorization was made authorizing payment to Shell Oil in the amount of $321,076.63.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 25:**

Responding Party objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 26:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 74 of the COMPLAINT that "there are numerous other suspicious and fraudulent transfers" relating to the HCET.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 26:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 27:**

Any and all Documents evidencing, referring to, relating to, or support [sic] YOUR allegation contained in Paragraph 75 of the COMPLAINT that "the Education's Trust operational formalities are not being followed."

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 27:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party objects to this Request to the extent that it seeks information

protected by the attorney-client privilege and/or attorney work product doctrine. Responding Party further objects to this Request to the extent that the information sought is a matter of public record, or is otherwise equally available to Defendants.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 28:**

Any and all Documents evidencing, referring to, or relating to any COMMUNICATIONS, instructions, requests, advice, or directions from Debtor to Helen Miller, Louis Blanchard, and/or Andrew Hantges relating to the HCET.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 28:**

Responding Party objects to this Request on the grounds that it is overly broad as to time and scope. Responding Party further objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request to the extent that it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate.

Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 29:**

Any and all check registers, bank statements, deposits slips, cancelled checks, for any and all bank accounts held in the name of USA Commercial Mortgage Company, Inc. held at any financial institution for the period commencing January 1, 2001 and ending December 31, 2001.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 29:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request on the grounds that it is overly broad as to scope. Responding Party further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects that the Request seeks documents equally available to Propounding Parties.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 30:**

Any and all general ledgers, audited or unaudited financial statements, accountings, balance sheets, and profit and loss statements for USA Commercial Mortgage Company, Inc. for the period commencing January 1, 2001 and ending December 31, 2001.

**OBJECTIONS AND RESPONSE TO DOCUMENT REQUEST NO. 30:**

Responding Party objects to this Request on the grounds that it is unduly burdensome and oppressive. Responding Party further objects to this Request on the grounds that it is overly broad as to scope. Responding Party further objects to this Request on the grounds that it seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence. Responding Party further objects to this Request on the grounds that it seeks private, privileged, and confidential commercial, financial, and/or proprietary business information. Responding Party further objects that the Request seeks documents equally available to Propounding Parties.

Subject to and without waiving these and any other objections, and to the extent he understands this Request, Responding Party will produce all non-privileged responsive documents, if any, which are in his possession, custody, or control and have not already been produced. Discovery has only recently commenced. Responding Party intends on conducting further investigation into this matter, and will supplement his response as appropriate. Responding Party reserves the right to amend or supplement these responses in the event any information previously available is unintentionally omitted herein or new information is obtained.

**REQUEST FOR PRODUCTION NO. 31:**

Any and all check registers, bank statements, deposits slips, cancelled checks, for any and all bank accounts held in the name of Reno South Meadows, LLC held at any financial institution for the period commencing January 1, 2001 and ending December 31, 2001.